## Richard and Amy Tarrant v. Department of Taxes

[733 A.2d 733]

No. 96-608

Present: **Johnson and Skoglund, JJ., and Allen, C.J. (Ret.), Gibson, J. (Ret.) and Katz, Supr. J., Specially Assigned**

Opinion Filed April 9, 1999

Motion for Reargument Denied May 3, 1999

*Robert B. Luce, William Roger Prescott* and *Christopher D. Roy* of *Downs, Rachlin & Martin, P.C.*, Burlington, for Plaintiffs-Appellees.

*Jeffrey L. Amestoy*, Attorney General, *J. Wallace Malley, Jr.*, Acting Attorney General, and *John M. Bagwell*, Special Assistant Attorney General, Montpelier, for Defendant-Appellant.

*Stephen S. Ostrach*, Boston, Massachusetts, for Amicus Curiae New England Legal Foundation.

**Skoglund, J.** The Vermont Department of Taxes appeals a superior court decision holding that taxpayers Richard and Amy Tarrant are entitled to an income tax credit on their 1989 joint income tax return for their pro rata share of taxes paid by their S corporation to states that did not recognize the pass-through taxation treatment of such corporations. The Department contends the court erred by construing the newly enacted 32 V.S.A. § 5916, which explicitly disallows the

credit at issue, as an amendment to 32 V.S.A. § 5825 rather than as a clarification of preexisting law. We affirm.

The parties stipulated to the facts of this case. IDX Systems Corporation, formerly known as IDX Corporation, has its headquarters in South Burlington, and taxpayers are Vermont residents. In 1989, Mr. Tarrant was president of IDX and owned 48.23% of its shares.[1] Previously, IDX had made a valid federal S corporation election, also recognized by Vermont. By virtue of this election, IDX did not pay either federal or Vermont corporate income taxes in 1989. That is, as explained in more detail below, rather than the corporation paying taxes on distributions to shareholders and the shareholders then paying personal taxes on the distributions received, IDX's income, whether or not distributed, was attributed to its shareholders in proportion to their percentage of ownership. Thus, in 1989 taxpayers reported and paid taxes on 48.23% of IDX's net income — allocable to Mr. Tarrant as a shareholder — as personal income for federal and Vermont tax purposes. This is known as pass-through taxation. See I.R.C. § 1366 (1986).

During the year at issue, IDX conducted business in a number of states beyond Vermont. In those states that accorded IDX pass-through tax treatment, taxpayers were required to pay personal income taxes on their pro rata share of IDX's net income attributable to IDX's business activities in those states. Since taxpayers paid personal income taxes to those states, they were permitted to claim a credit pursuant to § 5825 for those taxes. IDX conducted business, however, in several other states[2] that either did not recognize IDX's S corporation status[3] or, while recognizing IDX as an S corporation, nonetheless imposed a state, corporate-level tax on IDX's net income attributable to the corporation's activities within the state.[4]

In 1991, taxpayers timely filed an amended Vermont income tax return for 1989, claiming a credit under § 5825 against their 1989

---

[1] Amy Tarrant, Richard Tarrant's spouse, is a party in this matter because the Tarrants filed their 1989 Vermont income tax return and amended return jointly. See 32 V.S.A. § 5861(d) (imposing joint and several liability on joint filers).

[2] These jurisdictions were California, Connecticut, District of Columbia, Louisiana, Massachusetts, Michigan, New Jersey, and North Carolina.

[3] Since 1989, some of these states have enacted statutes recognizing S corporations. See, e.g., N.J. Stat. Ann. § 54A:5-9 (West 1996).

[4] For example, in 1989, California recognized S corporation status but still required such corporations to pay a corporate-level tax on income attributable to activities conducted within California. See Cal. Rev. & Tax. Code § 23802(b)(1) (West 1992); see also *Heller v. Franchise Tax Bd.*, 27 Cal. Rptr. 2d 88, 90 (Ct. App. 1994) (discussing California's treatment of S corporations for tax purposes).

Vermont personal income taxes for a pro rata share of taxes that IDX paid to such non-pass-through-taxation states. Pursuant to the version of § 5825 in effect for 1989:

> A taxpayer of this state . . . shall receive credit against the tax imposed, for that taxable year, by section 5822 of this title for taxes imposed by and paid to, another state or territory of the United States or the District of Columbia, upon his income earned or received from sources within that state, territory, or district.

32 V.S.A. § 5825 (Cum. Supp. 1989).[5] The Department denied the credit. Taxpayers appealed the denial to the Commissioner of Taxes, maintaining that because Vermont passes S corporation income through to the shareholders the tax imposed by other states on IDX's income constituted a tax imposed on taxpayers' income. The Commissioner denied the claim on the grounds that § 5825 only afforded the credit where taxpayers were personally liable to pay the taxes to the other state. Taxpayers then appealed the Commissioner's adverse determination to the superior court.

On May 15, 1996, prior to hearing but after the parties had filed memoranda of law with the superior court, the Legislature passed Act No. 169, entitled "An Act Relating to Miscellaneous Tax Changes." Whereas Vermont's tax code had previously contained only de minimis coverage of S corporation taxation, § 21 of the Act created a new taxation subchapter dealing specifically with the tax treatment of S corporations. See 1995, No. 169 (Adj. Sess.), § 21; Title 32, chapter 151, subchapter 10A. Section 5916 of this new subchapter provides:

> For purposes of section 5825 of this title, no credit shall be available to a resident individual, estate or trust for taxes imposed by another state or territory of the United States, the District of Columbia or a Province of Canada upon an S corporation or the income of an S corporation.

This section applies to tax years beginning on or after January 1, 1997. See 1995, No. 169 (Adj. Sess.), § 27. The Legislature also

---

[5] Section 5825 of Title 32 was subsequently amended in 1991, 1992, and 1997. See 1997, No. 50, § 16 (designating existing provisions of section as subsection (a) and adding subsection (b), which deals with tax issues for taxpayers who are Vermont residents domiciled in another jurisdiction); 1991, No. 186 (Adj. Sess.), § 12 (changing catchline of section and adding provisions concerning taxes paid to Canadian provinces); 1991, No. 67, § 26 (adding provision concerning taxes paid to Canadian provinces).

provided a sunset provision for this section; it lapses as of January 1, 2000. See *id.*

The court allowed both parties to file supplemental memoranda to address the Commissioner's decision in light of this new legislation. Taxpayers did not dispute that, if § 5916 had been in effect in 1989, they could not have received the § 5825 credit they seek. They argued, however, that § 5916 constituted an amendment, altering the meaning of § 5825. By contrast, the Department contended that § 5916 only confirmed and restated the existing law of § 5825. The court, agreeing with taxpayers' interpretation of § 5916 and noting that this interpretation was the "most significant" factor in its decision, reversed the Commissioner's determination and allowed the credit. This appeal followed.

Before addressing the specific issue on appeal, we first set forth, by way of background, a brief overview of the S corporation business form. "One of the disadvantages of doing business in [traditional] corporate form is the phenomenon of 'double taxation.'" *Wolff v. Director of Revenue*, 791 S.W.2d 390, 391 (Mo. 1990). A traditional corporation, also known as a C corporation because its governing provisions are found in Subchapter C, Chapter 1, Subtitle A of the United States Internal Revenue Code (I.R.C.), is treated as a separate taxable entity by the federal government and is required to pay corporate income taxes based on or measured by its net income. When a C corporation distributes its earnings and profits to its shareholders, these distributions generally are taxable to the shareholders as dividends. Thus, a C corporation's income that is distributed to its shareholders is taxed twice: once at the corporate level and once at the personal level.

In 1958, Congress adopted Subchapter S of the I.R.C. primarily to curtail the impact of double taxation on small businesses. See generally P. McDaniel, et al., Federal Income Taxation of Partnerships and S Corporations, at 383-87 (2d ed. 1997) (discussing legislative history and purpose of S corporations); 14A W. Fletcher, et al., Fletcher Cyclopedia of the Law of Private Corporations §§ 6970.191-6970.215 (perm. ed. rev. vol. 1991) (discussing S corporation characteristics). Subchapter S permits small businesses, or S corporations, to receive the "non-tax advantages of incorporation such as continuity of existence, insulation from personal liability, and ease of transferability of ownership," *Cohen v. Colorado Dep't of Revenue*, 593 P.2d 957, 959 (Colo. 1979), which are also available to C corporations. There

are, however, differences between S corporations and C corporations, most notably their tax treatment.[6]

S corporations and their shareholders are for the most part statutorily exempt from double taxation. See I.R.C. § 1363(a) (1986). But see *id.* § 1374 (S corporation is taxable on gain recognized from disposition of appreciated assets or income items acquired while corporation was a C corporation, or from a C corporation in a nonrecognition transaction). Instead, S corporations and their shareholders are treated for tax purposes much like partnerships and their respective partners. See S. Rep. No. 97-640, at 15 (1982) ("These rules generally follow the . . . rules governing the taxation of partners with respect to items of partnership income and loss."); see also *Beard v. United States*, 992 F.2d 1516, 1518 (11th Cir. 1993) ("The S corporation is, in effect, a Code-created hybrid combining traits of both corporations and partnerships."). A small business can thus "select the form of business organization desired, without . . . taking into account major differences in tax consequence." S. Rep. No. 85-1983, at 87 (1958).

At the federal level, S corporations are required to file only an informational return, reporting for the taxable year gross income (or loss), deductions, credits, the identity of its shareholders, and the shareholders' pro rata shares of each item. See I.R.C. § 6037(a). The taxable income of an S corporation is typically computed in the same manner as that of an individual. See *id.* § 1363(b). Certain deductions, however, are not available to the S corporation, but may be claimed by the individual shareholders. These include deductions for taxes paid to foreign countries or United States possessions. See, e.g., *id.* § 1363(c)(1), (2). The S corporation's income (or loss), deductions, and credits are passed through on a pro rata basis to the shareholders, who report them on their personal income tax returns. See *id.* § 1366(a)(1)(A) (items of income, including tax-exempt income, loss, deduction, or credit — separate treatment of which could affect any shareholder's tax liability — are passed through to shareholders). These pass-through items retain their character in the shareholder's

---

[6] Other differences include restrictions on the number and identity of corporation shareholders. See, e.g., I.R.C. §§ 1361(b)(1)(A), 1361(b)(1)(B), 1361(c)(2) (1986). In addition, an S corporation must be a domestic corporation. See *id.* § 1361(b)(1). It cannot have a stockholder who is a (1) nonresident alien individual, see *id.* 1361(b)(1)(C), (2) corporation, or (3) partnership. See *id.* § 1361(b)(1)(B). Finally, an S corporation may issue only one class of stock (although there is an exception for stock that varies in voting rights). See *id.* §§ 1361(b)(1)(D), 1361(c)(4). IDX terminated its S corporation election in 1995 when it offered its stock publicly.

hands. See *id.* § 1366(b) (character of any item included in shareholder's pro rata share shall be determined as if such item were realized directly from same source as realized by corporation, or incurred in same manner as incurred by corporation); S. Rep. No. 97-640, at 16 (similar to partnerships, items involved in determination of credits pass through to S corporation's shareholders). Thus, each shareholder reports the item on a personal income tax return as if the item were derived by the shareholder directly. See I.R.C. § 1366(b); S. Rep. No. 97-640, at 17-18 (like partners, each S corporation shareholder takes account of pro rata share of corporation's items of income, deduction, credit, etc.).[7] With this background in mind, we now turn to the Department's appeal.

Where there is an intermediate level of appeal from an administrative body, we review the case under the same standard as applied in the intermediate appeal. See *In re Town of Sherburne*, 154 Vt. 596, 603, 581 A.2d 274, 278 (1990). We will not set aside the Commissioner's findings of fact unless clearly erroneous. See *In re Agency of Admin.*, 141 Vt. 68, 75, 444 A.2d 1349, 1352 (1982). Conclusions of law, unlike findings, are not so protected. See *id.* Nonetheless, we do accord deference to the Commissioner's construction of tax statutes where it represents a permissible construction of the statute. See *Brattleboro Tennis Club, Inc. v. Department of Taxes*, 166 Vt. 604, 604, 691 A.2d 1062, 1063 (1997) (mem.); cf. *Burlington Elec. Dep't v. Department of Taxes*, 154 Vt. 332, 337, 576 A.2d 450, 453 (1990) (absent compelling indication of error, we will sustain on appeal interpretation of statute by administrative body responsible for its execution); *In re Agency of Admin.*, 141 Vt. at 76, 444 A.2d at 1352 (we will follow construction of statutes by those charged with their execution absent compelling indications construction is wrong, but, where statute is susceptible to more than one meaning, we will assure statute is being construed, not reconstructed).

Here, neither the Commissioner nor the superior court made findings because the parties submitted the matter for decision upon stipulated facts. The Commissioner's construction of § 5825, however,

---

[7] In 1986, due primarily to this special pass-through tax treatment, the maximum effective rate of taxation on S corporation income was estimated at 39.6%, while the maximum effective rate of taxation of distributed C corporation income was estimated at 60.74%. See P. McDaniel, et al., Federal Income Taxation of Partnerships and S Corporations, at 384 (2d ed. 1997). Not surprisingly, the avoidance of double taxation has made the S corporation a popular business form in the United States. See *id.*

does not withstand review. The Commissioner justified denial of taxpayers' requested credit by importing the phrase "personal liability" into the statute. The Commissioner then focused unduly on the imported language to conclude that the plain meaning of the credit provision precluded taxpayers from claiming a refund for taxes imposed on what Vermont considers their personal income but on which their S corporation paid taxes to non-pass-through-taxation states.

On appeal, the Department argues that an early version of the foreign tax credit provision supports this reading as the plain meaning of the statute. When the foreign tax credit provision was first added in 1957, it included the language "should a resident of this state . . . become *liable* to another state." See 1957, No. 52, § 1 (emphasis added) (codified as 32 V.S.A. § 5646 (1959)). The phrase was changed to the current version in 1966. See 1966, No. 61 (Spec. Sess.), § 1 (codified as 32 V.S.A. § 5825). The Commissioner testified before the Senate Finance Committee that the bill did not change the way in which individual taxpayers compute their tax liabilities. The Commissioner also submitted a memorandum that merely summarized § 5825 as restating § 5646 and providing the foreign tax credit. The Department alleges that the concept of personal liability was carried forward in the statutory language "for taxes *imposed by, and paid to,* another state." 32 V.S.A. § 5825 (emphasis added).[8]

Contrary to the Department's conclusion that the historical presence of the word "liable" demonstrates that the concept of personal liability continues to reside in the interstices of § 5825, we presume

---

[8] The Department also attempts to support its contention that tax credits are available only for those taxes for which a taxpayer is "personally liable" by relying on the language contained in three other sections in Title 32. Section 5822 permits the imposition of tax "upon the income earned or received in that taxable year by every individual, estate and trust." Section 5832 imposes a corporate income tax "upon the income earned or received in that taxable year by every taxable corporation." Finally, § 5861(a) requires that "[e]very individual, trust or estate subject to taxation for any taxable year under section 5822" file a tax return. The Department claims a synergistic reading of these sections in conjunction with § 5825 evinces the Legislature's intent to make a tax credit available only for those taxes paid by a taxpayer and for which a taxpayer is "personally liable." While we agree that these other sections should be read in pari materia with § 5825, see *In re Estate of Rushford*, 111 Vt. 494, 497, 18 A.2d 175, 176-77 (1941), we find this argument without merit. First, none of these sections expressly mentions the term "personal liability," and we decline to add it unnecessarily. More importantly, as is discussed *infra*, we conclude, due to the nature of S corporations and the legislative intent behind allowing corporations to elect S corporation status, that, as a matter of law, Vermont shareholders of a Vermont S corporation are personally liable for their pro rata share of taxes paid by their S corporation to other states where they conduct business.

that the Legislature adds and removes statutory language advisedly. See *Payea v. Howard Bank*, 164 Vt. 106, 107, 663 A.2d 937, 938 (1995); see also *State v. Fuller*, 163 Vt. 523, 528, 660 A.2d 302, 305 (1995) (it is inappropriate to expand statute by implication by reading into it something not there, unless it is necessary to make statute effective). Even if we were to accept that this sparse legislative history manifested a legislative intent to retain the word "liable," cf. *Swett v. Haig's, Inc.*, 164 Vt. 1, 6-7, 663 A.2d 930, 932 (1995) (declining to accept sparse legislative history as decisive), the meaning of § 5825 would remain far from plain.[9] Precisely what constitutes "his income earned or received," see 32 V.S.A. § 5825 (1989), would persist as an open question, a question unanswered by tying it to income on which a taxpayer incurs personal liability because, at least in Vermont, the pass-through taxation renders taxpayers personally liable for taxes on the income at issue.

■■ When interpreting a statute, our principal goal is to effectuate the intent of the Legislature. See *In re West*, 165 Vt. 445, 449, 685 A.2d 1099, 1102 (1996). Initially, in our attempts to ascertain legislative intent we look for guidance in the plain meaning of the words used. If legislative intent is clear, the statute must be enforced according to its terms without resorting to statutory construction. Conversely, if, as here, the statute is ambiguous, legislative intent must be determined through consideration of the entire statute, including its subject matter, effects and consequences, as well as the reason and spirit of the law. See *Harris v. Sherman*, 167 Vt. 613, 614, 708 A.2d 1348, 1349 (1998) (mem.). While we recognize the general rule that statutes granting credits must be strictly construed against the taxpayer, the construction must not defeat the purposes of the statute. *Stephens v. Department of Taxes*, 134 Vt. 178, 180, 353 A.2d 355, 356 (1976).

The effect of an intervening enactment becomes a matter for interpretation only after the plain language does not prove decisive. As we have concluded that the plain language of the statute does not resolve the question before us, we now address the primary grounds on which the superior court reversed the Commissioner's decision:

[9]We note that disallowance of the § 5825 credit for corporate taxes paid to nonrecognizing states did not appear plain, prior to enactment of § 5916, to one knowledgeable tax commentator. See St. Tax. Rep. (Vermont) (CCH) ¶ 10-215, at 1112 ("Applicable to taxable years beginning in 1997 through 1999, no credit will be available to a resident individual, estate or trust for taxes imposed by another state on the S corporation or its income.").

Act 169. Nondeferential review of Act 169's import is appropriate here — as it was at the superior court — given that the Commissioner's decision issued prior to its enactment, and the Commissioner therefore had no opportunity to take the Act into consideration.

The Department notes that subchapter 10A is Vermont's first orderly compilation of laws concerning taxation of S corporations. See 1995, No. 169 (Adj. Sess.), §§ 21-24. It then draws from the fact that at least some sections undisputedly confirm existing law, see *id.* § 21 (requiring S corporation shareholders to adhere to I.R.C. § 1366), the conclusion that the enactment does not provide evidence that cuts either for or against construction of § 5916 as an amendment.

Taxpayers support their view that the newly created § 5916 constitutes an amendment, as opposed to a clarification of preexisting law, with the fact Act 169 is entitled "An Act Relating to Miscellaneous Tax *Changes*." See 1995, No. 169 (Adj. Sess.) (emphasis added). Further, they rely on the Legislature's provision of effective and sunset dates, arguing that such dates would not have been necessary for a mere clarification and that, where the Legislature enacts a clarifying provision, it regularly specifies this and provides for the statute to be effective upon passage. See, e.g., 1994, No. 235, § 12(e) ("Sec. 9a and 9b are intended to clarify existing law. . . . Such sections shall take effect on passage and shall apply retroactively."). Finally, taxpayers observe that material changes in statutes evince an intent to change the effect of existing law. See *Rock of Ages Corp. v. Commissioner of Taxes*, 134 Vt. 356, 359, 360 A.2d 63, 65 (1975) (construing amendment that expressly brought extraction of mineral deposits under purview of manufacturing exemption as changing coverage of existing exemption).

We agree that § 5916 bears the indicia of an amendment. While we recognize that "[c]larification is a legitimate objective of legislative action," we presume that the Legislature intends to change the meaning of a statute, unless "the circumstances clearly indicate clarification to be intended." *Town of Cambridge v. Town of Underhill*, 124 Vt. 237, 241, 204 A.2d 155, 158 (1964). The Department fails to point to any persuasive evidence indicating the Legislature intended § 5916 as a clarification of § 5825 and, hence, fails to rebut the presumption that § 5916 changes the law with respect to S corporations.

█  Further, the fact that Act 169 contains specifically tailored effective dates for different provisions and a sunset date applicable to several of the Act's provisions, including § 5916, weighs against

construing § 5916 as merely clarifying legislation. If § 5916 merely clarified existing law, an effective date would have been unnecessary surplusage. By its own terms § 5916 was not effective until January 1, 1997. Consequently, the Department's contention that the section clarifies § 5825 in effect seeks retroactive effect for disallowance of the credit. Such a construction of the amendment would contravene 1 V.S.A. § 214(b)(1) (prohibiting amendment of statutory provision from affecting operation of provision prior to effective date). The dissent as well as the Department contend that, because Act 169 also contains extensive provisions adding to and changing the law with respect to S corporations, the Legislature understandably provided one sunset provision for the sections that add, amend, and clarify S corporation legislation. Although we agree it may have been easier for the Legislature to enact one sunset for the entire S corporation legislation instead of providing a sunset provision for only those sections that amended existing legislation, we also presume that the Legislature inserted the sunset provision advisedly. See *Payea*, 164 Vt. at 107, 663 A.2d at 938. Again, the Department fails to produce evidence to overcome this presumption. We therefore conclude that § 5916 was intended to change the meaning of § 5825. Nonetheless, while the enactment of § 5916 mitigates in favor of taxpayers' position, it is not, by itself, conclusive.[10] Our affirmance therefore also rests in part on other grounds articulated below.

■    Looking to both the purpose underlying the specific section at issue and the more general purposes behind Vermont's statutory taxation and corporation schemes, we encounter additional grounds for permitting taxpayers the credit. For Vermont individual taxpayers, § 5825 clearly permits a credit for taxes paid to foreign jurisdictions. The purpose of affording taxpayers credit for income taxes paid in another state is to prevent or alleviate the burden of double taxation. See *Stephens*, 134 Vt. at 180, 353 A.2d at 356. The Legislature has thus enacted tax provisions to eliminate the threat to

---

[10] The dissent relies on the Department's memorandum to the House Ways and Means Committee characterizing § 21 of Act 169, in which the new 32 V.S.A. § 5916 appears, as leaving current law unchanged. We find the memorandum unpersuasive given that the Department was at the same time pursuing the instant appeal. Moreover, legislative intent cannot be garnered simply from one submission to the committee. See, e.g., *Vermont Dev. Credit Corp. v. Kitchel*, 149 Vt. 421, 428, 544 A.2d 1165, 1169 (1988) (testimony and statements of legislative witnesses and individual legislators are inconclusive at best).

Vermont taxpayers of two or more taxing authorities taxing the same personal income more than once.

A second type of double taxation can occur when the same stream of income is taxed at the corporate level and then again at the personal level. Particularly for small businesses this double taxation proved onerous; hence the creation of the hybrid S corporate form in which the business is recognized as a corporate entity for certain purposes and, similar to partnerships, as a functional equivalent of its aggregate shareholders for taxation purposes. That is, with respect to income tax, the individual shareholders substitute for the corporation. The Department contends that taxpayers were not subjected to double taxation because two distinct entities, the corporation and the individuals, were taxed. The pass-through tax treatment of S corporations, however, in a sense renders or should render the corporate entity transparent for tax purposes.

By allowing S corporations to form and operate in Vermont and by adopting the federal pass-through treatment, the Legislature endorsed a policy against taxing both entities, the S corporation and its individual shareholders, on the same income. See S. Nechemias, *Shareholder Credits for Taxes Paid by the S Corporation to Another State*, 8 J. S Corp. Tax'n 141, 146 (1996) ("[I]f a shareholder's state of residence recognizes the flow-through status of S corporations, then such state has a policy against 'double taxation' of S corporation income."). Regardless of the fact that the Legislature has since espoused a different policy, see 32 V.S.A. § 5916, the policy as it then stood could only be realized if Vermont permitted its resident shareholders to receive a credit for corporate-level taxes paid to nonrecognizing states. Pursuant to 32 V.S.A. § 5833(a), a traditional Vermont taxable corporation is only taxed by Vermont on income attributable to its activities in Vermont, while activities in other states are taxed solely by those other states. A resident shareholder of a resident S corporation may claim a credit under § 5825 for taxes paid by the shareholder to other states in which the S corporation does business if the other states recognize its S corporation status.

The Department's interpretation of the § 5825 credit, however, essentially deprives taxpayers of the benefit of either § 5825 or § 5833 because income allocable to other states is included, without a corresponding credit, on their personal tax return at the same time as the other states tax the income at the corporate level. Thus, under the Department's view, the income is taxed in two places instead of allocated according to the location where the income arose. Since one

consequence of S corporation pass-through taxation is potential inclusion of undistributed corporate income on a resident shareholder's personal return, it is necessary to supply a corresponding credit to consistently apply Vermont's policy of alleviating double taxation of small businesses.

Vermont's "piggyback" on the federal income tax framework provides additional support for the credit. The Legislature has expressly codified its intent to conform the Vermont personal and corporate income taxes to the United States Internal Revenue Code, "*except as otherwise expressly provided,*" 32 V.S.A. § 5820(a) (emphasis added), for the purpose of simplifying the taxpayer's filing of returns, reducing the taxpayer's accounting burdens, and facilitating the collection and administration of these taxes. See *id.*; see also *Oxx v. Department of Taxes*, 159 Vt. 371, 375, 618 A.2d 1321, 1323 (1992) (noting that one of Legislature's goals is to "piggyback" Vermont's tax provisions onto federal tax structure).

The Legislature began "piggybacking" Vermont's tax statutes on the federal tax code in 1947. See 1947 V.S. § 948 (Vermont's tax policy to "conform as closely as may be with the Internal Revenue Code"); see also *id.*" § 932(VI) ("'Net income' means the same as net income, as defined under the Internal Revenue Code in effect April 26, 1947, excluding (a) income which under such code is expressly exempted from taxation by the states; and (b) capital gains and losses.").[11] Thus, in 1958, when Congress permitted the formation of S corporations and provided for them in the I.R.C., Vermont's tax provisions, due to the "piggyback" policy, automatically permitted the formation and operation of S corporations within Vermont, and also adopted the same tax treatment of S corporations as provided in the I.R.C.

We note that, at the federal level, shareholders of an S corporation are entitled to a foreign tax credit for their share of foreign income taxes paid by an S corporation. See I.R.C. §§ 901(b)(3), 1373(b) (1986). Vermont's tax provisions contain no language expressly denying taxpayers the credit at issue. In light of Vermont's § 5820 policy conforming our tax code to the I.R.C., absent an express provision to deviate from the federal tax scheme, like the newly enacted § 5916, shareholders are entitled to a tax credit for their share of "foreign" income taxes paid by an S corporation in another state, regardless of

---

[11] In 1967, the Legislature changed the manner in which personal income tax was calculated, from a percentage of net income to a percentage of federal income tax liability. See 1967, No. 121, § 4.

whether that "foreign" state recognizes S corporations.[12] See *White v. Commissioner*, No. 6558, 1995 WL 495912, at *2 (Minn. T.C., Aug. 18, 1995); *In re Baker*, No. 805550 TSB-D-90(28)I, 1990 WL 169491, at *3 (N.Y. Tax App. Trib. Oct. 11, 1990) (holding that resident shareholder of S corporation is eligible for tax credit for taxes paid by corporation in another state and noting that this conclusion is "consistent with the Internal Revenue Code which provides that shareholders of an S corporation are entitled to a foreign tax credit for their share of foreign income tax paid by an S corporation").

While the federal legislation concerning S corporations has been amended and revised over the past forty years, the fundamental purposes of Subchapter S — "to eliminate the corporation as a taxable entity and provide a system under which the operating profits of qualifying corporations are taxed directly to the shareholders," McDaniel, *supra*, at 384 — remain unchanged. Because of Vermont's goal to conform to the federal tax provisions, the Legislature also implicitly adopted and has maintained these fundamental purposes. Thus, by construing § 5825 as permitting the credit to pass through to the resident shareholders, we ensure that the fundamental goals and tax benefits provided to small Vermont multistate businesses operating as S corporations are not outweighed by the procedural complexities and costs of compliance with other states' rules. See J. Connors & R. Kozub, *Multistate S Corporations Endure Maze of State Laws*, J. Tax'n, Mar. 1989, at 179.

Finally, we must respond to the Department's few remaining arguments against granting the credit. The Department puts stock in two unenacted bills that, had they passed, would have expressly granted the type of tax credit at issue in the present case. We fail to see the significance of these two bills since the Legislature may well have rejected the bills for other reasons, such as the belief § 5825 already granted the credit. See *Munson v. City of S. Burlington*, 162 Vt. 506, 510, 648 A.2d 867, 870 (1994).

■ The Department also contends that taxpayers may not claim the credit because Vermont allows only those federal credits that are specifically identified in 32 V.S.A. § 5811(4). See 32 V.S.A. § 5811(4) (Cum. Supp. 1989) ("'Federal income tax liability' means . . . the federal income tax payable by the taxpayer . . . under the laws of the United States . . . after the allowance of the retirement income

---

[12] The express provision that was lacking in 1989 can now be found in 32 V.S.A. § 5916. See discussion *infra*.

credit, investment credit, foreign tax credit, child care and dependent care credit and alternative minimum tax credit, but before the allowance of any other credit against that liability."). We disagree. Section 5828b of Title 32 also grants a federal credit that is not listed in § 5811(4). See *id.* § 5828b(a) (Cum. Supp. 1989) ("A resident individual . . . who is entitled to an earned income tax credit granted under the laws of the United States shall be entitled to a credit . . . ."). Thus, because § 5811(4) is not the only section containing available federal credits, we are not constrained in concluding that § 5825 grants the credit at issue, which is also available to S corporation shareholders at the federal level.

The Department argues lastly that, if we construe § 5825 as granting the credit at issue, we will in effect be financing or subsidizing those other states' decisions to tax Vermont S corporations at the corporate level. If so, it was a legislative decision in the first instance — one that the Legislature has since changed. Moreover, we disagree that it amounts to a subsidy.

As discussed above, two Vermont tax provisions, §§ 5825 and 5833, allocate the primary taxing authority on income to the state from which it arises. These two sections alleviate the burden of double taxation for resident persons and corporations respectively. At the personal level, individuals must report all income received, no matter the source, on their personal income tax returns. While they are potentially subject to Vermont taxation on the total income, the taxpayer is able to offset some of the Vermont tax liability by claiming a credit pursuant to § 5825. The maximum tax credit that can be claimed, however, is limited. Section 5825 states that, "[i]n no case shall the credit allowed by this section exceed the portion of Vermont income tax, otherwise imposed by this chapter, attributable to the adjusted gross income earned or received from sources within such other state, territory or district." 32 V.S.A. § 5825 (Cum. Supp. 1989). In short, the actual amount of the income tax that was paid to another state is first determined, and then the potential Vermont income tax on the out-of-state income is calculated using Vermont's income tax provisions. The taxpayer may claim a credit only for the lesser of these two amounts. By contrast, Vermont corporations are taxed only on net income that is received from Vermont sources. See 32 V.S.A. § 5833. That is, as opposed to a credit for non-Vermont income, § 5833 provides from the outset for allocation of income according to its state source.

The interface between Vermont's tax policy and the policies of other states has both a positive and negative impact on the revenues

collected here. For instance, many Vermont residents work in New Hampshire. Vermont currently collects income tax on these residents' New Hampshire earnings because New Hampshire does not impose such a tax. Were New Hampshire to enact an income tax, Vermont would then allow a credit for that tax pursuant to § 5825. If the Vermont tax rate were higher, Vermont would continue to collect the difference between the New Hampshire and Vermont rates. New Hampshire's enactment of an income tax would certainly lower the total tax Vermont could collect from the Vermont residents who perform work in New Hampshire. Nonetheless, this does not mean that Vermont would then be subsidizing New Hampshire. To the contrary, the benefit, or windfall, Vermont has received from New Hampshire's lack of income tax would merely be reduced. Similarly, the other states at issue in this appeal can legally collect a tax on income that IDX derives from activities in their state. Whether they choose to adopt a policy of collecting the tax in the form of a personal income tax, because they recognize pass-through taxation of S corporations, or in the form of a corporate tax, because they do not recognize such tax treatment, they have the opportunity either way of imposing a tax on that stream of income.

The Legislature has attempted to maximize Vermont's tax revenues while protecting Vermont's resident taxpayers, including S corporation shareholders, from the possibly unfair and burdensome impact of double taxation. In the event another state imposes a higher tax rate than does Vermont, the taxpayer, not Vermont, pays the difference. As it existed in 1989, the § 5825 credit ensured that Vermont small business shareholders were able "to select the form of business organization desired, without the necessity of taking into account major differences in tax consequence." S. Rep. No. 85-1983, at 87.

The Department cannot escape the consequences of the Legislature's corporation and tax policies. If we were to accept the Department's position that a credit was not authorized in the case at bar, Vermont's policies favoring small business by insulating them from double taxation would be compromised, and taxpayers would be unreasonably penalized — caught between the Scylla of § 5825 and the Charybdis of § 5833.

■ Accordingly, we conclude that § 5825 entitled taxpayers to claim a credit for 1989 taxes IDX paid to other states that did not treat the S corporation's income on a pass-through basis. Our

conclusion obviates the need to address the constitutional issues raised by taxpayers.

*Affirmed.*

**Katz, Supr. J.,** specially assigned, dissenting. For the most part, the Court's lengthy interpretation of a one-sentence statute is aimed at supporting its view that granting a tax credit in the instant situation is good policy. To achieve this result, however, the Court ignores the plain meaning of the relevant statute and the applicable standard of review. Accordingly, I dissent.

Taxpayers are Vermont residents and S corporation shareholders who paid personal income tax in Vermont on their pro rata share of the net income of IDX Systems Corporation. As resident individual taxpayers, they were entitled under Vermont law applicable at the time to receive credit against the individual income tax assessed "for taxes *imposed* by, and paid to, another state . . . *upon his income* earned and received from sources within that state." 32 V.S.A. § 5825 (Cum. Supp. 1989) (emphasis added). In this case, taxpayers seek a credit for a corporate tax that Massachusetts imposed upon IDX's income. Based on a reasonable interpretation of § 5825's plain meaning, the Vermont Commissioner of Taxes determined that taxpayers were not entitled to the credit. In the Commissioner's view, because IDX is a distinct entity and a separate taxpayer from individual shareholders such as taxpayers, the credit does not apply.

I believe that this is the correct view, and that we should defer to the Commissioner's decision. Section 5825 does not explicitly state whether shareholders, taxed as individuals in Vermont, may claim credit for corporate taxes imposed by another state on their S corporation's income. But a literal reading of the statute precludes a credit in such circumstances. See S. Nechemias, *Shareholder Credits for Taxes Paid by the S Corporation to Another State*, 8 J. S Corp. Tax'n 141, 144 (1996) (in states with statutory provisions that allow credit for taxes paid by S corporation shareholders to another state but say nothing about whether credit is available for corporate taxes paid by S corporation itself, credit for corporate taxes is not available because those taxes were not paid by shareholders); *Kreizenbeck v. Arizona Dep't of Revenue*, No. 1126-94-I, 1995 WL 331529, at *5 (Ariz. Bd. Tax. App., Apr. 24, 1995) (under similar statute, credit not available to S corporation shareholders for taxes imposed by another state on S corporation).

We must presume that the plain meaning of the statutory language evinces the Legislature's intent, see *Chamberlin v. Department of*

*Taxes*, 160 Vt. 578, 580, 632 A.2d 1103, 1104 (1993), and we must sustain the interpretation of a statute made by the administrative agency responsible for its execution, absent compelling indication of error. See *Burlington Elec. Dep't v. Department of Taxes*, 154 Vt. 332, 337, 576 A.2d 450, 453 (1990). Further, we have repeatedly stated that a statute providing a tax exemption or credit must be strictly construed against the party claiming the exemption or credit unless such a construction would produce irrational results or defeat the purposes of the statute. See *Chamberlin*, 160 Vt. at 580, 632 A.2d at 1104; *Medical Ctr. Hosp. v. City of Burlington*, 152 Vt. 611, 615, 566 A.2d 1352, 1354 (1989); *In re R. S. Audley, Inc.*, 151 Vt. 513, 516-17, 562 A.2d 1046, 1049 (1989); *Stephens v. Department of Taxes*, 134 Vt. 178, 180, 353 A.2d 355, 356 (1976); see also *Pizzagalli Construction Co. v. Department of Taxes*, 132 Vt. 496, 499, 321 A.2d 437, 440 (1974) ("no claim of exemption [or credit] can be sustained unless within the express letter or necessary scope of the exempting clause"). In this case, upholding the Commissioner's literal reading of § 5825 would neither lead to absurd consequences nor defeat the purposes of the statute. Nor is there any compelling indication of error.

Section 5825 is aimed at alleviating the burden of double taxation. See *Stephens*, 134 Vt. at 180, 353 A.2d at 356. But the double taxation precluded by § 5825 is two separate states imposing the same type of tax on the same income during the same taxing period. See *id.* at 179, 353 A.2d at 356 (part-time, out-of-state residents taxed by Vermont and New York on personal income earned in New York). Here, Vermont imposed an individual income tax on taxpayers' personal income, while Massachusetts imposed a corporate income tax on IDX's income. Thus, there is no double taxation, just as there is no double taxation when the income of a corporation is taxed both at the corporate level and after it passes on to shareholders in the form of dividends. See *State Tax Comm'n v. Television Servs., Inc.*, 495 P.2d 466, 469 (Ariz. 1972) (no double taxation occurs when corporation is taxed on its income, and then same income is taxed after being passed on to shareholders in form of dividends; corporation and its stockholders are separate and distinct entities, and their incomes are separate and distinct subjects of taxation). Notwithstanding Vermont's elective pass-through tax treatment of the income of S corporations, S corporations and individual shareholders remain distinct entities and separate taxpayers. In this case, taxpayers are individuals, and Massachusetts has taxed their corporation, not them.

Section 5825's purpose of preventing double taxation is not defeated by denying credit to S corporation shareholders for taxes

imposed on their S corporations by states that do not recognize the federal S election. To be sure, the S corporations' income earned or derived in those few states that do not recognize the federal S election will be taxed at the corporate and shareholder levels. But § 5825 continues to protect individuals ("the taxpayer") from having to pay two separate states the same type of tax on the same income. Indeed, although the Legislature has now enacted a statute explicitly denying credit to S corporation shareholders for corporate taxes imposed on S corporations by other states not recognizing the federal S election, see 32 V.S.A. § 5916, resident S corporation shareholders in Vermont continue to receive credit against individual income taxes imposed by states that do recognize the federal S election.

Under the Court's reasoning, Vermont law as it now stands, with the enactment of § 5916, compromises Vermont's fundamental public policy goals of insulating small businesses from double taxation. I do not agree. Notwithstanding the Court's repeated lament to the contrary, upholding the Commissioner's reasonable interpretation of § 5825 would not undermine the goal of preventing double taxation any more than § 5916 does so now.

In any event, the Commissioner's well-reasoned interpretation of § 5825 is entitled to deference notwithstanding the subsequent enactment of § 5916, which neither amended § 5825 nor changed existing law. Section 5916 was one small provision included in Act 169, which consisted of twenty-seven sections. Of the twenty-seven sections, sixteen amended specific provisions in Title 32, six added new provisions, two repealed old provisions, and two concerned appropriations and effective dates. Section 21 of Act 169 added a new subchapter to chapter 151 of Title 32 aimed at creating Vermont's first discrete and orderly compilation of laws concerning the taxation of S corporations. Section 5916, one of the provisions of this new subchapter, provides that "no credit shall be available to a resident individual . . . for taxes imposed by another state . . . upon an S corporation or the income of an S corporation." Section 5916 does not refer to § 5825. Further, although each of the sixteen amendatory sections in Act 169 refer to and set forth the provision being amended, § 21 does not indicate that § 5916 amends or implicates § 5825. Moreover, the memorandum containing a written summary of each of Act 169's sections that was sent to the House Ways and Means Committee by the Department of Taxation, which drafted Act 169, indicated that current law would remain unchanged. Although the Department specifically noted in its summary of other sections when existing law

was being amended, nothing in the Department's summary of § 21 suggests that § 5916 was intended to change § 5825.

In sum, Act 169 amended many provisions of the tax code, but § 5825 was not one of them. Section 5916 is but one of several provisions contained in the new subchapter that confirms, specifies, details, and consolidates existing law concerning S corporations. See, e.g., 32 V.S.A. § 5914(a) (confirming existing law contained in 32 V.S.A. § 5862); 32 V.S.A. §§ 5911(b), 5912 (confirming existing law contained in 32 V.S.A. §§ 5823, 5832). Because § 5916 is only a small part of a comprehensive act aimed principally at specifying and consolidating the law on S corporations, its enactment does not indicate a substantive change in the law. See *Oklahoma Tax Comm'n v. Stanolind Pipe Line Co.*, 113 F.2d 853, 856 (10th Cir. 1940) (presumption that new enactment intended substantive change in existing law is fairly strong in case of isolated, independent amendment, but has much less persuasive force when new enactment is general, comprehensive tax code); see 1A N. Singer, Sutherland Statutory Construction § 22.30, at 266 (5th ed. 1994) (accord).

Nor is the sunset provision imposed on §§ 21 through 24 of Act 169 rendered meaningless if we conclude that § 5916 merely specified existing law. An effective date of limited duration would make no sense if applied only to § 5916, but considering the general scope of the sunset provision, it does not undermine the State's view that § 5916 merely specified and confirmed existing law under the plain meaning of § 5825.

Further, I am not impressed with the Court's reliance on the fact that federal law entitles S corporation shareholders to a foreign tax credit for their share of foreign income taxes paid by the corporation. Vermont is not required to follow federal law. In general, an individual's Vermont state income tax is calculated as a percentage of that individual's federal income tax. Further, as the Court notes, our income tax laws conform to federal law to simplify the filing of returns and ease administrative burdens. 32 V.S.A. § 5820(a). But Vermont's adoption of a "piggyback" system does not mean that Vermont income tax law is required to follow, or does follow, every nuance of federal law. See J. Conners & R. Kozub, *Multistate S Corporations Endure Maze of State Laws*, 70 J. Tax'n 174, 176-77 (March 1989) (noting differences between Vermont law and federal law regarding S corporations). Section 5825 is a provision of Vermont's tax code that does not exist in the federal tax code. We should not stray from its plain meaning based on perceived analogous federal law.

In the end, the Court sets forth a number of policy arguments for why a credit should be allowed under the instant circumstances — a position that has been expressly rejected by the Legislature in enacting § 5916 — but it has failed to demonstrate that a credit is available under the plain meaning and strict construction of § 5825. Ironically, the Court proclaims that "[t]he Department cannot escape the consequences of the Legislature's tax policies," when in fact the Legislature plainly adopted the Department's position of not allowing a credit under the instant circumstances, and this Court refuses to defer to the Department's interpretation of the statute confirming that position. It is this Court that evades the consequences of the Legislature's tax policies by imposing its own policy, which ignores not only the expertise of the Commissioner but also our long-standing policy of denying a claimed credit unless it is plainly provided by statute. The Court states that it is an "open question" under § 5825 whether taxpayers are entitled to the credit claimed here, and yet the Court grants the credit notwithstanding the ambiguity it recognizes and the contrary ruling of the agency assigned to implement the statute. Further, if indeed § 5825 is ambiguous as to the point of law raised in this appeal, the Court fails to recognize that § 5916 was enacted merely to clarify the question left in doubt by the previous statute.

Because I believe that taxpayers are not entitled to a credit under the statute's plain meaning, and that taxpayers' constitutional challenges to the statute on equal protection, proportional contribution, and common benefits grounds are wholly without merit, see *Oxx v. Department of Taxes*, 159 Vt. 371, 376, 618 A.2d 1321, 1324 (1992) (statute is constitutional if it is reasonably related to legitimate public purpose); *Fleury v. Kessel/Duff Constr. Co.*, 149 Vt. 360, 362, 543 A.2d 703, 704 (1988) (one who seeks to void statute undertakes very weighty burden); *Wheeler v. State*, 127 Vt. 361, 366, 249 A.2d 887, 891 (1969) (party challenging constitutionality of statute has burden to demonstrate discrimination to extent that it is arbitrary and unreasonable), I dissent.