Town of Colchester, Vt. v. Vt. Dep't of Taxes, Div. of Prop. Valuation and Review, No. S0861-10 CnC (Toor, J., Aug. 25, 2011)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

VERMONT SUPERIOR COURT
CHITTENDEN UNIT
CIVIL DIVISION

| | |
|---|---|
| TOWN OF COLCHESTER, VERMONT<br>  Plaintiff<br><br>v.<br><br>VERMONT DEPARTMENT OF TAXES,<br>DIVISION OF PROPERTY VALUATION<br>AND REVIEW, VERMONT<br>DEPARTMENT OF EDUCATION,<br>COLCHESTER SCHOOL DISTRICT,<br>FANNY ALLEN HOLDINGS, INC.<br>  Defendants | Docket No. S0861-10 CnC |
| IN RE: APPEAL OF THE TOWN OF<br>COLCHESTER | Docket No. S0933-10 CnC |
| PACE VERMONT, INC.<br>  Plaintiff<br><br>v.<br><br>TOWN OF COLCHESTER<br>  Defendant | Docket No. S1524-10 CnC |

RULING ON PACE'S MOTION FOR SUMMARY JUDGMENT

I. Introduction and Procedural History

In 2008, the Religious Hospitallers of St. Joseph of Vermont, Inc. (RHS), owner of a certain 5-acre property in Colchester (the Property), and RHS's lessee PACE Vermont, Inc. (PACE), appealed from the Colchester Board of Civil Authority's (BCA) conclusion that the Property's fair market value was $1,624,800. RHS and PACE later

amended their petition to include a request for declaratory relief and moved for summary judgment seeking a declaration that the Property is tax-exempt. The State of Vermont was not a party to the appeal, but the Town of Colchester (the Town) was. The Town filed a motion supporting RHS and PACE's summary judgment motion. This court granted the motion based on the Town's assent, and ordered that the Property was entitled to an exemption under 32 V.S.A. § 3802(4) for properties dedicated to public, pious or charitable uses.[1]

The appeal described above—dubbed the "Pace appeal" and docketed No. S0024-08 CnC—underlies the three above-captioned consolidated cases. The Town did not collect taxes on the Property. The State of Vermont, however, has maintained that the Property is not tax-exempt. That basic difference in positions spawned these three cases. In No. S0861-10 CnC (the "Declaratory Judgment Action"), the Town brought a complaint for declaratory judgment against the State seeking an order affirming the Property's tax-exempt status or requiring the Property owner to pay the Town. In No. S0933-10 CnC (the "VAB Appeal"), the Town appealed from the Valuation Appeals Board's conclusion that it could not find the Property to be tax-exempt. In No. S1524-10 CnC (the "2010 Tax Appeal"), PACE appealed from a BCA decision filed November 8, 2010 in which the BCA concluded that the assessed value of the Property remained at $1,624,800, but voted to do nothing on the question of the Property's tax-exempt status because the Board lacked authority to make that decision.

In a ruling filed January 28, 2011, this court granted the State's motion for summary judgment in the VAB Appeal, rejecting the Town's various arguments as to why summary judgment should be denied (including a challenge to the Division of

---

[1] Subsequent statutory citations are to Title 32 unless otherwise noted.

2

Property Valuation and Review's (PVR) authority to determine taxability), and concluding that because the Property is owned by a religious society, and because it is neither a "home" nor a "hospital," § 3832(2) operates to prevent the court from construing § 3802(4) as exempting the Property.[2] PACE, which was not a party to the VAB Appeal at the time of the court's ruling, filed a motion to intervene in that case, to consolidate the VAB Appeal with the 2010 Tax Appeal and the Declaratory Judgment Action, and to reconsider the ruling. The court granted the motion and now has before it PACE's motion for summary judgment, in which PACE argues that PVR lacks subject matter jurisdiction to determine exemptions.[3] Pamela Moreau, Esq. represents PACE; Assistant Attorney General Suzanne M. Monte represents the State.

## II. Background

In support of its motion, PACE has filed a nine-paragraph "Statement of Material Undisputed Facts." The State has filed a paragraph-by-paragraph response, asserting in each paragraph that PACE has failed to supply citations to the record, and that the factual allegation is not material to the issue raised in PACE's motion. For a more complete understanding of the facts and procedural history in this case, it may be helpful to refer to the court's January 28, 2011 ruling. The only fact material to the present motion is undisputed: on appeal from PVR, the VAB concluded that the Property is not tax exempt.

---

[2] Familiarity with that ruling is presumed here.

[3] The State has also filed a motion for summary judgment addressing the underlying question of tax-exempt status. PACE has requested additional time to respond. The court grants PACE 30 days to file its response. The court notes that although it previously determined in the VAB Appeal that PACE is not tax-exempt, because the court granted PACE's motion to intervene and to reconsider, the issue is before the court again. Because PACE was not a party at the time of the earlier ruling, the court will consider its additional arguments on the taxability issue.

### III. Summary of the Parties' Positions

PACE argues that PVR lacks subject matter jurisdiction to determine exemptions. PACE further contends that PVR has adopted as policy a proposed legislative fix that was not enacted into law and that PVR's interpretation leads to absurd results. In opposition, the State argues that: (1) the Commissioner of Taxes is authorized and required to distinguish between property that must be listed at fair market value (i.e., taxable) and property that is not required to be listed at fair market value (i.e., tax-exempt); (2) PACE mistakenly relies on § 3411, proposed legislation, and on <u>Subud of Woodstock, Inc. v. Town of Barnard</u>, 169 Vt. 582 (1999) (mem.); (3) PACE's reading of the applicable statutes is based on circular reasoning; and (4) <u>Town of Hartford v. Commissioner of Taxes</u>, 135 Vt. 560 (1977), supports the State's independent statutory authority to determine the equalized education property tax grand list.

In reply, PACE argues generally that that there is a "bright line" between valuation and exemption determinations, and that PVR's purview is limited to the former, whereas exemption determinations are for the courts. Specifically, PACE argues that: (1) the plain meaning of the phrase "required to be listed at fair market value" in § 5401(6) has a simple explanation unrelated to exemption authority; (2) sections 5401(6) and 5405 give the State valuation authority but not exemption authority; (3) sections 5401(5) and 5412 support the distinction between valuation and exemption authority; (4) section 5412's 2008 amendments have no impact on the pending cases, but support the conclusion that the State lacks authority over exemptions; (5) the <u>Hartford</u> decision is in harmony with the distinction between valuation and exemption; and (6) section 5404a further supports PACE's interpretation because it distinguishes between charitable use

4

property exempted "by vote" and exempted "by law." In a surreply,[4] the State asserts that: (1) the Property is not exempt "by law"; (2) the State has statutory authority to independently determine the equalized education property tax grand list; and (3) PACE's approach leads to an absurd result.

## IV. Discussion

The basic issue presented by PACE's summary judgment motion is whether PVR has authority to determine a property's tax-exempt status. This is essentially the same issue that the Town raised in opposing the State's summary judgment motion in the VAB Appeal. In its January 28, 2011 ruling, the court addressed the issue at some length, reviewing the general scheme set forth in Act 60 as well as the Hartford and Subud cases. The court reached the following conclusions: (1) municipalities determine their "education property tax grand lists" and the State determines the statewide "equalized education property tax grand list"; (2) both determinations require conclusions as to whether property is exempt by law; and (3) PVR has authority to reach a conclusion on the exemption issue that is different than a municipality's determination.

### A. Potential Sources of Authority

If PVR has authority to determine a property's tax-exempt status, that authority must come from somewhere. Naturally enough, PACE begins with § 3411, which is entitled "Powers of the property valuation and review division." PACE asserts that § 3411 does not grant PVR power to oversee or make decisions about exemptions. The State does not argue that § 3411 contains any such provision, but instead argues that the education property tax statutes were enacted after § 3411, are more specific, and

---

[4] PACE has filed an objection to the State's surreply on the grounds that it is not accompanied by a motion, and that it is duplicative of arguments already set forth in the State's opposition. The court does not see either of those arguments as a reason to disregard the surreply.

5

therefore control. The court agrees with the general proposition that where one statutory provision lists an administrative body's powers, a later-enacted statutory provision can add to those powers even if the earlier list is not updated. *See* Our Lady of Ephesus House of Prayer, Inc. v. Town of Jamaica, 2005 VT 16, ¶ 16, 178 Vt. 35 (reciting rule of construction that "'[w]here two statutes cover the same subject and one is more specific than the other, we harmonize them by giving effect to the more specific provision according to its terms.' Also, newer statutes will be enforced over older statutes, if there is a conflict" (internal citations omitted)).[5] The court therefore turns to the provisions of Chapter 135.

### B. The Education Property Tax Statute

Under Chapter 135, as the court previously noted, each municipality determines its "education property tax grand list." 32 V.S.A. § 5404(a). The "education property tax grand list" is the list of property determined pursuant to § 5404. Id. § 5401(5). Pursuant to § 5404, municipalities determine the education property tax grand list "by calculating one percent of the listed value of nonresidential and homestead real property as provided in this section." Id. § 5404(a).

> The listed value of all nonresidential and homestead real property in a municipality shall be [1] its fair market value, [2] its value established under a stabilization agreement described in section 5404a of this title, or [3] the use value of property enrolled in a use value program under chapter 124 of this title.

---

[5] PACE seems to concede this point, framing the question at one point as whether PVR has authority in § 3411 "or elsewhere." PACE's Mot. for Summ. J. at 6 (filed Feb. 16, 2011).

Id. (bracketed numbers supplied).[6] "Nonresidential property" means all property except, among other things, "[p]roperty which is exempt from the municipal property tax by law and not by vote of the municipality." Id. § 5401(10)(A).

Examining these statutory provisions, a few conclusions are apparent. First, the "listed value" of nonresidential and homestead real property in a municipality is one of three things. If such property is enrolled in a use value program, then its listed value is its use value. If a stabilization agreement establishes such a property's value, then that is its listed value. If neither of those is true, then such a property's listed value is its fair market value. Notably, then, not all nonresidential and homestead property is required to be listed at fair market value. Second, the value of real property in a municipality that is not "nonresidential" or "homestead"[7] real property is not used to calculate a municipality's education property tax grand list. Third, in order to avoid improperly including "nonresidential" real property in that calculation, a municipality must make an initial determination as to whether a particular property is exempt by law.

The statewide tax to fund education costs is based on the grand lists compiled by the municipalities. *See* Dewey v. Town of Waitsfield, 2008 VT 41, ¶ 6 n.1, 184 Vt. 92; *see also* § 5404(b) (requiring municipalities to transmit their grand list data, including exemption information, to the director of PVR). To actually calculate the education tax,

---

[6] "Listed value" has a particular definition for the purposes of Vermont's property taxation statutes: it generally means "an amount equal to 100 percent of the appraisal value." Id. § 3481(2). The "appraisal value" also has a particular definition: "with respect to property enrolled in a use value appraisal program, the use value appraisal as defined in subdivision 3752(12) of this title, multiplied by the common level of appraisal, and with respect to all other property, the estimated fair market value." Id. § 3481(1). These general definitions appear to be roughly consistent with the provisions of § 5404(a), but to the extent there is any difference, the court concludes that the more specific provisions of § 5404(a) control with respect to determining education property tax grand lists.

[7] "Homestead" also has a particular definition in § 5401(7), although that definition is not relevant to the present analysis.

however, it is not enough to have the municipalities' education property tax grand lists; it is necessary to know the municipalities' "common level of appraisal." *See* § 5402(b)(1) (calculation of education tax depends in part on common level of appraisal). The common level of appraisal, in turn, depends on the aggregate value of the municipalities' "<u>equalized</u> education property tax grand list[s]." <u>Id</u>. § 5401(3) (emphasis added) (defining common level of appraisal).

The Commissioner of Taxes determines each municipality's "<u>equalized</u> education property tax grand list." <u>Id</u>. § 5405(a) (emphasis added).[8] The "equalized education property tax grand list" is:

> [1] one percent of the aggregate fair market value of all nonresidential and homestead property that is required to be listed at fair market value as certified during that year by the director of property valuation and review under section 5406 of this title, plus [2] one percent of the aggregate value of property required to be listed at a value established under a stabilization agreement described under section 5404a of this title, plus [3] one percent of the aggregate use value established under chapter 124 of this title of all nonresidential property that is enrolled in the use value appraisal program.

<u>Id</u>. § 5401(6) (bracketed numbers supplied). The equalization process the Commissioner performs on the education property tax grand lists is designed to address the reality that, given the ever-changing real estate market and the fact that town-wide reappraisals are not conducted annually, it is not feasible for each municipality's listers to list all taxable property each year at its fair market value. <u>Dewey</u>, 2008 VT 41, ¶ 6 n.1. The Commissioner uses a variety of factors to determine the fair market value of property required to be listed at fair market value. 32 V.S.A. § 5405(c).

A critical question for present purposes is whether the Commissioner, in the course of determining a municipality's equalized education property tax grand list, may

---

[8] The sum of all municipal equalized education property tax grand lists is the equalized education property tax grand list for the state. <u>Id</u>. § 5405(b).

make determinations about the tax-exempt status of properties in the municipality. PACE's position is that the State must accept the exemption determinations a municipality makes when it transmits its education property tax grand list. *See* Reply at 7 (filed June 1, 2011). The State says that nothing in Vermont's education tax statutes requires the State to simply accept a municipality's determination of exemption. Surreply at 1 (filed June 8, 2011).

The parties have not cited, and the court has not found, any provision in Title 32 that requires the State to accept a municipality's exemption determination. More important, however, is the definition of the equalized education property tax grand list— which the Commissioner must determine. The State maintains that, in order to determine whether property is "required to be listed at fair market value," the Commissioner must first determine whether the property is taxable or not. Opp'n at 1 (filed May 2, 2011). PACE maintains that § 5401(6)'s reference to property "required to be listed at fair market value" has nothing to do with tax-exempt status and instead is meant to distinguish between the other two categories of properties that are *not* required to be listed at fair market value. Reply at 2 (filed June 1, 2011).

The court believes the answer lies not in the "required to be listed" language, but instead in § 5401(6)'s explicit mention of "nonresidential" property. Since the equalization determination involves taking a percentage of "nonresidential" (and "homestead") property, the Commissioner has an independent mandate to include only properties that meet those definitions. Property that is exempt by law is not "nonresidential" property. 32 V.S.A. § 5401(10)(A). Thus the Commissioner may make an independent determination as to whether property is exempt by law.

9

C. <u>What Happens When the Municipality and the Commissioner Disagree?</u>

Given that both the municipality and the Commissioner have mandates to exclude legally exempt property from the education property tax grand list and the equalized education property tax grand list, respectively, the question becomes—as these cases make clear—what happens when the municipality and the Commissioner disagree about whether a property is exempt by law? The Legislature did not say what to do in that case, but it is clear that the Legislature never intended for property to be "nonresidential" for the purposes of a municipality's education property tax grand list but not for the equalized education property tax grand list.

1. <u>Legislative Intent</u>

The court pauses here to take up PACE's argument about what the Legislature might have done, but ultimately did not do. In 1998, the Legislature created a "Commission on Property Tax Exemptions" and charged the commission with reviewing all exemptions from property tax as well as the construction and interpretation of exemptions by the courts and by municipal and state officials. 1997, No. 71 (Adj. Sess.), § 59. The commission convened, held meetings, took testimony, and submitted its report to the Legislature in January 1999. *See* PACE's Mot. for Summ. J. Ex. C (filed Feb. 16, 2011). As to the goal of ensuring the integrity of the equalized education grand list, the commission concluded that "the advent of a statewide property tax with the equalized education grand list as its base makes it essential that the State have a role in determining whether properties qualify under the public, pious and charitable exemption and consequently reduce the equalized education grand list." <u>Id</u>. at 6.

10

The commission proposed legislation that would, among other things, allow towns to request formal rulings from the State as to whether a particular property meets the requirements of public, pious and charitable use exemption. Id. at 8. The House considered legislation on the subject and ultimately passed H.53, which would have repealed all of Chapter 125 and replaced it with new language. H.53, 1999-2000 Gen. Assem. (2000 Vt.). Under the bill's new language, property owners seeking exemption for property dedicated to a charitable or public use would be required to obtain certification from a "certification officer" appointed by the Commissioner. Id. § 2. A party aggrieved by the certification officer's determination could appeal to the director of PVR, with further appeal available to the superior court. *See* id.

Although passed by the House, H.53 was never enacted into law. PACE argues that the committee's report and H.53 both acknowledge PVR's limited authority and propose a legislative solution that PVR has adopted by unauthorized policy rather than by statutory mandate. The State argues that the fact that H.53 did not become law proves that the Legislature viewed the current legislative scheme as adequate. The court is reluctant to draw either conclusion, since the Legislature may reject bills for various reasons. Tarrant v. Dep't of Taxes, 169 Vt. 189, 202 (1999). If anything, the committee's report and H.53 both recognized that the current statutory scheme could lead to a lack of uniformity in the application of the exemption for public, pious and charitable uses. *See* PACE's Mot. for Summ. J. Ex. C, pp. 8–9 (allowing towns to request formal rulings from the State on exemption would "promote uniformity in the application of the exemption and allows towns to avoid exempting properties from payment of education taxes which are included on the equalized education grand list by the Division of

11

Property Valuation and Review"). The committee's report and H.53 are not evidence that under the current statutory scheme the State plays no role with respect to exemption, but are at most evidence that the role the State does play could lead to a lack of uniformity in exemption determinations.

## 2. The Practical Solution

The only practical solution to the problem under the statutory scheme as it currently exists is to provide a mechanism for all parties to come to court for a definitive answer on the taxability question.[9] The difficulty with this solution—as these cases demonstrate—is that there are multiple paths to the courthouse door for different parties depending on the particular taxation issue, and no one seems quite sure which path is the right one. The court thus briefly examines the potential appeals routes.

A taxpayer aggrieved by a municipality's determination as to the appraisal of a property may appeal from the listers' decision to the board of civil authority, and then to either PVR or to the superior court. 32 V.S.A. §§ 4404 (appeal to board of civil authority); 4461 (further appeal to the director of PVR or the superior court). By contrast, a taxpayer aggrieved by a municipality's initial determination as to whether a property is tax-exempt need not file an appeal with the board of civil authority, and should instead proceed directly to file an action for declaratory judgment with the superior court. Subud of Woodstock, Inc. v. Town of Barnard, 169 Vt. 582, 583 (1999) (mem.).

---

[9] This conclusion avoids the irrational result that PACE fears would flow from a conclusion that the State is not bound by a municipality's determination of a taxability question. Where a municipality and the Commissioner do not agree on that question, they both need to come to court for an adjudication. Bringing all the parties together in one proceeding will avoid conflicting decisions and promote a uniform application of the exemption.

The Subud decision did not say, however, whether the Commissioner should be a party in the declaratory judgment litigation. The court concludes that the Commissioner is a party needed for the just adjudication of such a case. A declaratory judgment binding on the taxpayer and the municipality would not bind the Commissioner, and the result could be a municipal education property tax grand list that is at odds with the Commissioner's equalized education property tax grand list, and a situation where a municipality might owe education property taxes to the State that it never collected from a taxpayer.

The court had not reached this conclusion at the time of the Pace appeal, however. In addition, it is conceivable that a taxpayer and a municipality might agree that a property is exempt and never seek a declaratory judgment to that effect. In both cases, the question becomes how to get all the parties before a court if the Commissioner disagrees with both the municipality and the taxpayer on the taxability question. One potential is to proceed, as in the VAB Appeal, through the § 5408 redetermination process.[10] Another option is to proceed with a declaratory judgment action, which the Town did in No. S0861-10 CnC.

The latter option bypasses PVR and VAB, and makes it irrelevant whether either have jurisdiction to decide taxability questions. The former option assumes that PVR and VAB either do have jurisdiction, or can decline to rule on the issue and simply pass the question up the appellate chain until it reaches the superior court. In any case, the court

_____

[10] Section 5408 creates a "detailed process" by which a municipality may appeal its grand list value. Town of Bridgewater v. Dep't of Taxes, 173 Vt. 509, 510 (2001) (mem.). The appeals process begins with a petition for redetermination addressed to the director of PVR. 32 V.S.A. § 5408(a). If the municipality disagrees with the director's redetermination, it may appeal to the VAB. Id. § 5408(c). The municipality may appeal the VAB's decision to the superior court and ultimately to the Supreme Court. Id. § 5408(d).

13

concludes that, with all the parties present, it may properly proceed to decide the question of taxability.[11]

This result is not inconsistent with either Subud or Hartford. As PACE points out, Hartford analyzed valuation (not exemption), and did so under a different statute. The court noted those distinctions in its earlier ruling; Hartford is consistent with the conclusion that the Commissioner is not bound by a municipality's determination on a question of exemption. Subud, meanwhile, was focused on the appellate process from the listers. It said nothing about the Commissioner's mandate to exclude "nonresidential" property from the equalized education grand list, nor did it address the problems that might arise if the Commissioner's conclusion differed from a municipality's.

## V. Conclusion

In sum, the court reaffirms its earlier conclusions that: (1) municipalities determine their "education property tax grand lists" and the State (namely, the Commissioner) determines the statewide "equalized education property tax grand list," and (2) both determinations require conclusions as to whether property is exempt by law. Furthermore, the Commissioner has authority to reach a conclusion on the exemption issue that is different than a municipality's determination. When that happens, the only practical solution is for all the parties to come to court for an adjudication. Whether through declaratory judgment or the § 5408 redetermination process (both of which were employed in these cases), any role PVR can or should play ought not to prevent the superior court from resolving the taxability question in this case.

---

[11] As the court notes today in its ruling in Champlain Housing Trust, Inc. v. City of Burlington, No. S1392-10 CnC, there remains a question as to whether PVR should be the state entity bound by whatever declaratory judgment this court ultimately issues, or whether it might be more proper or advisable to join the Commissioner of Taxes instead. The court leaves that question to the parties to determine.

14

Order

PACE's motion for summary judgment is denied. PACE is directed to file its response to the State's motion for summary judgment within 30 days.

Dated at Burlington this 24th day of August 2011.

_____
Helen M. Toor
Superior Court Judge