Charles L. LONG and Ruth S. Long, Plaintiffs-Appellees,

v.

UNITED STATES of America, Defendant-Appellant.

No. 79–1688.

United States Court of Appeals, Sixth Circuit.

Argued April 16, 1981.

Decided July 6, 1981.

W. J. Michael Cody, U. S. Atty., Memphis, Tenn., William M. Holmes, Gary R. Allen and Jay W. Miller, Tax Division, Dept. of Justice, M. Carr Ferguson, Asst. Atty. Gen., Tax Division, Dept. of Justice, Washington, D. C., for defendant-appellant.

James E. Threlkeld, G. Keith Rogers, Jr., Threlkeld & Howard, Memphis, Tenn., for plaintiffs-appellees.

Before WEICK and MERRITT, Circuit Judges, and GILMORE, U. S. District Judge.*

WEICK, Circuit Judge.

The government appeals in this tax refund case from the grant of summary judgment by the United States District Court for the Western District of Tennessee in favor of the taxpayer-plaintiffs, Charles and Ruth Long, husband and wife. The case concerns the propriety of the government's recapture under the provisions of Section 47(a) of the Internal Revenue Code of 1954 of a $9,867.97 investment tax credit taken by the Longs on their 1972 joint income tax return under Section 38 of the Code. On appeal, the primary issue raised concerns the validity of Treas.Reg. § 1.47–3(f) under the authority of which the Commissioner of Internal Revenue acted in imposing the recapture tax. This Regulation defines the "mere change in form" exception of Section 47(b) to the recapture requirements of Section 47(a). The district court held the regulation invalid as applied to the "particular facts" of this case, which was necessary for it to do in order to grant relief to the taxpayers. For the reasons which follow, we disagree as we hold that the regulation was valid and accordingly reverse.

I.

Charles and Ruth Long were the sole shareholders of Long Construction Company, a "Subchapter S" corporation engaged in the sand and gravel business. During the fiscal year ending October 31, 1972, the corporation purchased certain pieces of equipment which qualified as "section 38 property." [1] "Section 38 property" is

defined in Section 48 of the Internal Revenue Code and refers, inter alia, to new or used ("used section 38 property") depreciable or amortizable tangible personal property and certain other tangible property used predominantly in the United States as an integral part of manufacturing, production or extraction. Under Section 38 of the Code, the purchaser of "section 38 property" is entitled to an investment tax credit, the amount of which is determined under Section 46 of the Code, which may be applied against the purchaser's income tax liability for the year of purchase. Where the purchaser, however, is a Subchapter S corporation, Section 48(e) of the Code provides that the investment credit shall be apportioned pro rata among the shareholders. Charles and Ruth Long therefore claimed the corporation's investment tax credit of $9,867.97 on their 1972 joint income tax return.

At the end of its 1972 fiscal year, the Long Construction Company was liquidated under Section 331(a) of the Internal Revenue Code. The corporate assets, including those that had qualified for an investment credit, were distributed to the shareholders, Mr. and Mrs. Long, in exchange for their stock. The business once conducted by the corporation was continued by the Longs as a proprietorship, where the section 38 property was used as it had been used by the corporation.

After an audit of the Longs' 1972 return, the Commissioner of Internal Revenue determined that the 1972 distribution in liquidation constituted an "early disposition" of section 38 property which rendered the Longs liable for a recapture tax equal to the full amount of the investment credit under Section 47(a) of the Code. [2] The

---

\* The Honorable Horace W. Gilmore, United States District Judge for the Eastern District of Michigan, sitting by designation.

1. The equipment included a combination lift crane and a dragline, a dragline bucket, caterpiller loader, and three pick up trucks. The total cost of the equipment was $145,379.89.

2. Section 47(a)(1) of the Code provides that where "section 38 property" is "disposed of, or

otherwise ceases to be section 38 property ... before the close of the useful life which was taken into account in computing the credit under section 38," the tax for the year is to be increased by the difference between the amount of the credit originally claimed and the credit that would have been allowed taking into account a useful life ending on the date of the "early disposition." In the instant case, it is undisputed that the Longs were subject to a recapture tax of $9,867.97 in 1972, assuming

Longs paid the $9,867.97 additional tax assessed by the Commissioner. Their claim for a refund was disallowed, and the Longs then commenced the instant action in the district court seeking a refund.

In the district court, the inquiry focused upon the applicability of section 47(b). Section 47(b) of the Code provides two specific exceptions to the recapture tax triggered by an "early disposition" of section 38 property: "(1) a transfer by reason of death, or (2) a transaction to which section 381(a) [relating to carryovers in certain corporate acquisitions] applies." [3]  Sections 47(b)(1) and (2). Section 47(b) further excepts from a recapture tax transactions which involve a "mere change in the form of conducting the trade or business ..." [4]  Under Treas. Reg. Section 1.47–3(f)(1)(ii), the "mere change in form" exception is applicable only if all of the following conditions are satisfied:

(a) The section 38 property ... is retained as section 38 property in the same trade or business,

(b) The transferor (or in a case where the transferor is a partnership, estate, trust, or electing small business corporation, the partner, beneficiary, or shareholder) of such section 38 property retains a substantial interest in such trade or business,

the distribution in liquidation was an "early disposition" of section 38 property and none of the exceptions to the recapture tax provisions are applicable.

**3.** Section 47(b)(3) provides a third specific exception—"a transfer to which subsection (c) of section 374 (relating to exchanges under the final system plan for ConRail) applies"—which was added subsequent to 1972, the year relevant to the instant case. Revenue Act of 1978, P.L. 95–600, 92 Stat. 2763, Section 317(a).

**4.** Section 47(b), in relevant part, specifically provides:

For purposes of [§ 47(a)], property shall not be treated as ceasing to be section 38 property with respect to the taxpayer by reason of a mere change in the form of conducting the trade or business so long as the property is returned in such trade or business as section 38 property and the taxpayer retains a substantial interest in such trade or business.

(c) Substantially all the assets (whether or not section 38 property) necessary to operate such trade or business are transferred to the transferee to whom such section 38 property is transferred, and

(d) The basis of such section 38 property in the hands of the transferee is determined in whole or in part by reference to the basis of such section 38 property in the hands of the transferor ....

In the instant case, it is undisputed that the first three of these conditions were satisfied. It is also conceded that the final condition was not.[5] The district court was therefore called upon to determine the validity of Treas.Reg. § 1.47–3(f)(1)(ii)(d). The court's conclusion that this final condition of the regulation was invalid as applied to the facts of the case rests on two determinations. First, after characterizing the liquidation of the Long Construction Company and continuation of the business as a proprietorship as a "classic example of a mere change in the form of a business," the court determined that application of the regulation was inconsistent with language of the Code. Second, the court determined that the application of the regulation to these facts was inconsistent with the purpose of the recapture tax.

**5.** Section 331(a) of the Code, under which the liquidation of Long Construction Company was accomplished, provides that the amount distributed in complete liquidation of a corporation shall be treated as full payment in exchange for the stock. The distribution is treated as a sale would be treated; the gain or loss to the distributee is determined under § 1001 of the Code, and the amount recognized is determined under § 1002. Under § 334(a) of the Code, the basis of property received in a liquidation to which § 331 applies is its fair market value at the time of the distribution, and as such is not determined by reference to its basis in the hands of the corporation. These rules, of course, do not apply to the liquidation of a subsidiary, which is not taxable under § 332, or to a liquidation in which the elective provisions of § 333 of the Code apply.

## II.

As noted, Section 47(b) of the Code excepts from a recapture tax early dispositions of section 38 property which involve no more than the "mere change in the form of conducting the trade or business." The Longs have argued that this language, when given its plain meaning, includes transactions such as the one involved in this case.[6] We have recently been reminded by the Supreme Court, however, that the meaning of the Internal Revenue Code of 1954 is "anything but plain." *Fulman v. United States*, 434 U.S. 528, 532–33, n. 7, 98 S.Ct. 841, 845 n. 7, 55 L.Ed.2d 1 (1978). Indeed, it is for this reason that Congress has delegated to "masters of the subject" the primary task of interpreting this complex Code. *National Muffler Dealers Association v. United States*, 440 U.S. 472, 477, 99 S.Ct. 1304, 1307, 59 L.Ed.2d 519 (1979). In any event, we believe the Longs' argument misconceives the nature of our review of the challenged regulation.

■ All parties to this appeal agree that Treas.Reg. § 1.47–3(f)(1)(ii)(d) is a legislative regulation which was issued pursuant to a clear congressional delegation of rule making authority.[7] Our review of the regulation as a consequence is limited in scope. In cases of this sort, "[t]he rule of the judiciary ... begins and ends with assuring that the Commissioner's regulations fall within his authority to implement the congressional mandate in some reasonable manner." *Bates v. United States*, 581 F.2d

---

**6.** The Longs have also argued that there can be no investment credit recapture because no section 38 property was "disposed of, or otherwise cease[d] to be section 38 property", *i. e.* the distribution in liquidation of the Long Construction Company's section 38 property was not an "early disposition" under § 47(a) of the Code. Simply put, they contend that because the investment credit of a Subchapter S corporation is passed through to the shareholders (who, under § 48(e) are "treated as the taxpayer[s] with respect to such investment."), the liquidating distribution of the corporation's section 38 property represent, in effect, a "transfer" to themselves of their own assets. Thus, where the entity generating the investment credit is a Subchapter S corporation, there can be a disposition under § 47(a) only where the shareholders "dispose" of their shares. It is not altogether clear whether this argument was raised below; it certainly was not considered by the district court. At any rate, we believe the argument to be without merit.

The legislative history of the investment credit provisions of the Code makes it plain that a shareholder of a Subchapter S Corporation "will be subject to the provisions of section 47" if *"the corporation subsequently disposes of such property* [section 38 property], or if the shareholder disposes of his stock in such [Subchapter S] corporation." S.Rep.No. 1881, 87 Cong., 2d Sess., U.S.Code & Adm.News, 87th Cong., 2d Sess., pp. 3304, 3464–65 (1962) (emphasis added). This view is reflected in Treas.Reg. § 1.47–4(a), which provides that a shareholder of a Subchapter S corporation is subject to § 47 of the Code if the corporation "disposes of any section 38 property ..." The Longs have not challenged the validity of this regulation (in fact, they have not seen fit to even allude to it in their brief), and, as a legislative regulation, we must give effect to it. *See*

note 7, *infra*. The Longs' argument is thus reduced to the question of whether the corporation "disposed" of its section 38 property when it distributed such property in liquidation. Here, however, the parties are agreed that a distribution in liquidation constitutes a "disposition" under § 47(a). *Ramm v. Commissioner*, 72 T.C. 671 (1979). *See also*, Rev.Rul. 73–515, 1973–2 Cum.Bull. 7; S.Rep.No. 1881, 87 Cong., 2d Sess.; U.S.Code & Adm.News, 87th Cong., 2d Session, p. 3450 (1962).

**7.** Section 38(b) of the Code provides that the "Secretary [of the Treasury] or his delegate [the Commissioner of Internal Revenue] shall prescribe such regulations as may be necessary to carry out the purpose [of the investment credit provisions of the Code]." It has been held that regulations issued pursuant to this section are legislative. *Yellow Freight System v. United States*, 538 F.2d 790, 795–96 (8th Cir. 1976). Further, § 47(a) of the Code grants the Secretary or his delegate the specific authority to implement by regulations the recapture tax of § 47.

As a legislative regulation, Treas.Reg. § 1.47–3(f)(1)(i)(ii)(d) has the same effect as a valid statute. If valid, we are thus compelled to give effect to it. *Batterton v. Francis*, 432 U.S. 416, 425, n. 9, 97 S.Ct. 2399, 2405 n. 9, 53 L.Ed.2d 448 (1977). In contrast, an interpretive regulation is not binding on this court. Nonetheless, we customarily defer to an interpretive Treasury Regulation issued under § 7805(a) of the Internal Revenue Code, unless the regulation is "unreasonable and plainly inconsistent with the revenue statutes." *Fulman v. United States*, 434 U.S. 528, 533, 98 S.Ct. 841, 845, 55 L.Ed.2d 1 (1978). *See also, National Muffler Dealers Association v. United States*, 440 U.S. 472, 477, 99 S.Ct. 1304, 1307, 59 L.Ed.2d 519 (1979).

575, 580 (6th Cir. 1978) quoting *United States v. Correll*, 389 U.S. 299, 307, 88 S.Ct. 445, 450, 19 L.Ed.2d 537 (1967). Our task, therefore, is to determine only whether the regulation is clearly in conflict with the statute's language and purpose. If it is not, we must uphold it, even were we to believe the Longs' interpretation of Section 47(b) the better. *Buczynski v. General Motors Corp.*, 616 F.2d 1238, 1243 (3rd Cir.), aff'd sub nom., *Alessi v. Raybestos-Manhattan, Inc.*, 448 U.S. 911, 101 S.Ct. 25, 65 L.Ed.2d 1141 (1981).

The government contends that the expression "mere change in form" is not unique to the recapture tax provision of the Code. In other contexts, the government argues, the expression has been used to describe certain transactions not treated as taxable exchanges. Since such exchanges result in a continuity of basis in the transferred assets, the regulation's requirement that the basis of the section 38 property "in the hands of the transferee [be] determined . . . by reference to the [property's] basis in the hands of the transferor" is therefore consistent with the "mere change in form" language of the statute.

The legislative history of Section 47(b) provides little help in determining what precisely Congress intended by the "mere change in form" language. The single reference at all helpful indicates only that a "mere change in form" could be effected "through incorporation, the formation of a partnership, or otherwise." S.Rep.No. 1881, 87 Cong., 2d Session; U.S.Code & Adm. News, 87th Cong., 2d Sess. p. 3453 (1962). Nonetheless, what is instructive of this brief reference is that both examples can entail a tax-free transfer of property and a carryover basis for that transferred property. Specifically, Section 721 of the Code provides for the tax-free treatment of con-tributions of property to a partnership in exchange for partnership interests, and, under Section 723, the property contributed inherits the basis of the property in the hands of the transferor. Likewise, Section 351 of the Code treats as a nontaxable exchange the transfer of property to a controlled corporation in exchange for the stock or securities of the corporation, and, under Section 362(a), the basis of the property transferred is determined with reference to its basis in the hands of the transferor.

Such transfers have often been described as transactions in which there is but a "mere change in form." *See e. g., Kamborian's Estate v. Commissioner*, 469 F.2d 219, 221 (1st Cir. 1972); *Hempt Brothers, Inc. v. United States*, 354 F.Supp. 1172, 1176 (M.D. Pa.1973), aff'd, 490 F.2d 1172 (3rd Cir.), cert. denied, 419 U.S. 826, 95 S.Ct. 44, 42 L.Ed.2d 50 (1974); Bittker & Eustice, *Federal Income Taxation of Corporations and Shareholders*, ¶ 3.01 at 3–7 (4th ed.). *See also, Helvering v. Cement Investors, Inc.*, 316 U.S. 527, 533, 62 S.Ct. 1125, 1128, 86 L.Ed. 1649 (1942); *American Compress & Warehouse Co. v. Bender*, 70 F.2d 655, 657 (5th Cir. 1934); *Portland Oil Co. v. Commissioner*, 109 F.2d 479, 488 (1st Cir. 1940); *Barker v. United States*, 200 F.2d 223, 228 (9th Cir. 1952). Indeed, it is the congressional recognition that the transfers described in the provisions work only a change in form, not in substance, which largely explains the decision by Congress not to tax such transactions. *See Kamborian's Estate v. Commissioner*, 469 F.2d at 221. A similar recognition underlines the congressional decision of Section 361(a) not to tax a corporate reorganization, described in § 368(a)(1)(F) as "a mere change in identity, form, or place of organization, however, effected." [8] *See Movielab, Inc. v. United*

---

**8.** Of course, § 368(a)(1) includes other types of reorganizations in addition to those which are "mere changes in form." The transfer of section 38 property in connection with these other types of tax-free reorganizations would in many instances also be excepted from the recapture tax of § 47(a) under the specific exception of § 47(b)(2). As noted, § 47(b)(2) excepts from recapture tax "A transaction to which section 381(a) applies." In other words, § 47(b)(2) would except from § 47(a) tax-free liquidations of subsidiaries governed by § 332 and tax-free organizations under § 368(a)(1)(A), (C), (D) and (F), all of which of course involve carryover basis under §§ 362(b) and 334(b)(1). It should be noted that the

*States*, 494 F.2d 693, 698 (Ct.Cl.1974). As is the case with the tax-free transfer of property to a partnership or to a controlled corporation, property transferred in connection with such a plan of reorganization inherits a carryover basis under Section 362(b) of the Code.

Thus, the Commissioner of Internal Revenue has consistently taken the position that the expression "mere change in form" refers only to nontaxable exchanges which thus result in a carryover basis. For instance, in Section 50A(c)(2)(B)(ii) of the Code,[9] which concerns a tax credit for work incentive expenses, where Congress has used the expression "mere change in form of conducting the trade or business," the Commissioner, in Treas.Reg. Section 1.50A–4(g)(1)(ii)(d) has interpreted this language requiring that the "basis of [the assets] . . . in the hands of the transferee [be] determined in whole or in part by reference to the basis of such [assets] . . . in the hands of the transferor." Similarly, Treas.Reg. Section 1.167(a)–11(b)(7)(ii), issued pursuant to Section 167(m) of the Code which concerns depreciation based on the class life system, requires as a necessary condition for a "mere change in the form of a trade or business," that the "basis of such property in the hands of the transferee [be] determined in whole or in part by reference to the basis of the property in the hands of the transferor."

In contrast with these types of nontaxable exchanges are transactions such as the one involved in the instant case. Though in a sense the Longs have "only changed the fashion in which [they] hold title to the assets," the Internal Revenue Code regards a liquidating distribution under Section 331 as a change in substance and treats it in the same manner as a sale or exchange of stock would be treated.[10] Bittker & Eustice, *Federal Income Taxation of Corporations and Shareholders*, ¶ 11.01 at 11–4 (4th ed.); *Cf. Kind v. Commissioner*, 54 T.C. 600 (1970) (Distribution of assets from corporation in liquidation under Section 331(a) to shareholder who operated business as proprietorship and then transferred assets to new corporation was a change in substance and hence not entitled to tax-free treatment under Section 368(a)(1)(F)). As a consequence of that treatment, the property is given a new basis under Section 334(a) equal to the fair market value. The recipient of a liquidating distribution by a partnership is similarly taxed under Section 736 of the Code. Having arranged for and accepted the liquidating distribution, the Longs cannot now avoid the consequences of Section 331.

It is therefore not surprising that the Commissioner, in Treasury Regulations issued under a number of Code provisions, has contrasted liquidations with "mere changes in form." For instance, the Commissioner has provided that the expression "sold, exchanged, or otherwise disposed of" would encompass "the surrender of a stock certificate for corporate assets in complete or partial liquidation of a corporation pursuant to section 331 . . . [but would] not, however, extend to transactions which are mere changes in form." Treas.Regs. §§ 520.2032–1(c)(1); 20.6166–3(e)(2); 1.1015–5(a)(1)(ii).

■ We conclude from the foregoing that the requirement of Treas.Reg. Section 1.47–3(f)(1)(ii)(d) that the basis of transfer-

---

exception of § 47(b)(2) thus does not apply to similar transactions for which a carryover basis is not provided for under § 334; namely, liquidations, to which the basis provisions of § 334(b)(2) apply. We think it difficult to imagine that Congress would specifically decide in § 47(b)(2) to subject to recapture tax a liquidation of a subsidiary and at the same time have intended that other liquidations would be excepted from recapture tax under the general ". . . mere change in form" exception.

9. Section 50A(c) of the Code has been repealed by Section 322(c) of the Revenue Act of 1978, P.L. 95–600, 92 Stat. 2763, effective for work incentive program expenses paid or incurred after December 31, 1978.

10. A different rule applies to certain liquidations of corporate subsidiaries, which are tax-free under § 332(a) and which generally involve a carryover basis under § 334(b)(1). But as noted, *supra* note 8, such tax-free liquidations are specifically excepted from recapture tax under § 47(b)(2).

red section 38 property must be determined with reference to its basis in the hands of the transferor is not plainly inconsistent with the "mere change in form" language of Section 47(b). We further conclude that the regulation's requirement is not in conflict with the purpose of the statute.

The legislative history of Section 47 is clear that one of the primary purposes for imposing a recapture tax was to "guard against the quick turnover of assets by those seeking multiple credit." S.Rep.No. 1881. 87 Cong., 2d Sess.; U.S.Code & Adm. News, 87th Cong., 2d Sess., p. 3320 (1962). *See also, Charbonnet v. United States*, 455 F.2d 1195, 1199 (5th Cir. 1972). One of the reasons giving rise to a multiple credit problem is that an investment credit is allowable both for "new section 38 property", as defined in Section 48(b), and "used section 38 property," as defined in Section 48(c). Under Section 48(c), a credit for "used section 38 property" is permitted where such property is "acquired by purchase." The word "purchase" is defined in § 48(c)(3)(A) as having the same meaning assigned to the term by § 179(d)(2) of the Code, which broadly defines the term to include "any acquisition of property" where "the basis of the property in the hands of the person acquiring it is *not* determined . . . in whole or in part by reference to the adjusted basis of such property in the hands of the person from whom acquired."

It is thus apparent that Treas.Reg. Section 1.47–3(f)(1)(ii)(d) effectively limits the "mere change in form exception" of Section 47(b) to transactions which cannot constitute "purchases" of "used section 38 property". At the same time, the regulation excludes from the "mere change in form" exception those transactions which do qualify as "purchases." One such category of transfers is the distribution of assets in a liquidation of a corporation not involving a carryover basis. *See Smyers v. Commissioner*, 57 T.C. 189, 191–194 (1971); Rev. Rul. 73–761, 1973–2 Cum.Bull. 10.

Not every transaction involving the assignment of a new basis will necessarily qualify for an investment credit for the "purchase" of "used section 38 property." The definition of the term "purchase" in Section 179(d) of the Code excludes transfers between certain related parties where their relationship would result in the disallowance of losses under Section 267 or Section 707(b). The definition further excludes transactions between members of an affiliated group. Likewise, Section 48(c) itself excludes from being treated as "used section 38 property" property used "by a person who used such property before such acquisition."

In the instant case, it appears that the Longs would not be entitled to another investment credit given the attribution rules of Sections 267(c)(2) and (4) and the definition of "used section 38 property" in Section 48(c), though the latter is problematic. *See, Holloman v. Commissioner*, 551 F.2d 987 (5th Cir. 1977). We think, however, this fact irrelevant to the question of the regulation's validity. *See, United States Steel Corp. v. Commissioner*, 617 F.2d 942, 954 (2nd Cir. 1980). The draftsman of regulations is necessarily forced to consider the need for blanket rules which can easily be applied and consulted by taxpayers looking for guidance in planning their affairs. As such, it may indeed be impossible to draft regulations which, when applied, will in every instance actually further the legislative purpose. This is especially so in "this area of limitless factual variations". *United States v. Correll*, 389 U.S. at 307, 88 S.Ct. at 450.

Though the application of the challenged regulation to the facts of this case may not actually further the legislative purpose, we cannot conclude that its application is in conflict with that purpose, and it is only this question with which we are concerned. We note in this regard that since the challenged regulation became final on October 9, 1967, Congress has amended Section 47(a) no fewer than six times [11] and Section 47(b)

11. Sec. 703(c)(1) and (2), Tax Reform Act of 1969, P.L. 91–172, 83 Stat. 487; Sec. 1, Act of January 12, 1971, P.L. 91–676, 84 Stat. 2060; Secs. 102(c); 107(a)(1) and (b)(1), Revenue Act

once.[12] Even were the regulation's relationship to Section 47(b) not so readily apparent, we would be reluctant to conclude that the regulation is inconsistent with congressional intentions. Regulations of long-standing under Code sections which Congress has thereafter frequently amended may be viewed as reflecting the approval of Congress. *See Lykes v. United States*, 343 U.S. 118, 127, 72 S.Ct. 585, 590, 96 L.Ed. 791 (1952); *United States v. Correll*, 389 U.S. at 305–06, 88 S.Ct. at 448–449.

of 1971, P.L. 92–178, 85 Stat. 497; Sec. 302(b)(2)(A), (c)(1) and (2), Tax Reduction Act of 1975, P.L. 94–12, 89 Stat. 26; Sec. 804(b), Tax Reform Act of 1976; P.L. 94–455, 90 Stat. 1520; and Sec. 241(b)(1) and (2), Energy Tax Act of 1978, P.L. 95–618, 92 Stat. 3174.

### III.

For the foregoing reasons, the judgment of the district court is reversed.

12. Sec. 317(a), Revenue Act of 1978, P.L. 95–600, 92 Stat. 2763.