933 A.2d 243 (2007)
2007 VT 90
In re M.W., Juvenile.
No. 07-083.
Supreme Court of Vermont.
August 23, 2007.
Present: REIBER, C.J., DOOLEY, JOHNSON, SKOGLUND and BURGESS, JJ.

ENTRY ORDER
¶ 1. Mother appeals from the family court's order terminating her residual parental lights in M.W., and denying her request to create a permanent guardianship. She argues that the family court erred as a matter of law in rejecting her request for a permanent guardianship. We affirm.
¶ 2. M.W. was born in September 1998. In May 2005, she was taken into emergency custody by the Department for Children and Families (DCF) due to concerns about mother's drug use and the child's exposure to domestic violence. M.W. was placed with her half-brother's paternal grandmother, where she remains. In July 2005, MW. was adjudicated as a child in need of care or supervision (CHINS) based on mother's admission of a serious drug problem. During the period when M.W. was in DCF custody, mother made minimal progress in addressing the goals of the case plan. She continued to use drugs, did not maintain regular contact with M.W., and had almost no contact with DCF. In May 2006, DCF filed a petition to terminate mother's parental rights (TPR).
¶ 3. After several days of hearings on the TPR petition, mother filed a petition to create a permanent guardianship. She asserted that this disposition was appropriate because it was not reasonably likely that the child would be returned to her parents or that she would be adopted during the remainder of her minority. After another day of hearings, the court issued its final order terminating mother's residual parental rights and denying her request to create a permanent guardianship. The court made the following findings. Although mother and M.W. shared a close and affectionate bond, mother placed her daughter's needs a distant second behind the demands of her drug addiction and social life. Mother had seen M.W. only a handful of times since she was taken into DCF custody, and she did not visit M.W. at all between November 2005 and December 2006. Mother had minimal contact with DCF, and she had not seriously engaged in any of the programs outlined in the disposition plan. She had no significant *244 employment, no home of her own, and was still receiving substance abuse treatment approximately twenty-one months after the initial CHINS order. Mother had also recently married a man who was serving time for domestic violence. The court found little likelihood that mother would be able to parent M.W. in the foreseeable future.
¶ 4. The court found that grandmother provided M.W. with much-needed stability and that she and MW. had a close loving relationship. Grandmother was prepared to adopt M.W. Grandmother also recognized the importance of the relationship between mother and M.W., and she testified that she intended to allow and encourage visits between mother and M.W. as long as mother was sober during visits and arrived when promised. The court found that grandmother's promises to facilitate contact shed considerable light on the understanding and compassion that grandmother had for M.W.'s difficult psychological situation.
¶ 5. Based on these and numerous other findings, the court concluded that mother had stagnated in her ability to parent, and that it was in M.W.'s best interests to be freed for adoption by grandmother. The court explained that while it had no doubt mother loved M.W., her addiction, her choice of companions and the lifestyle that accompanied addiction rendered mother unable to provide a stable home to and consistent care for M.W. As the court found, M.W. was seriously neglected before coming into DCF custody, and after coming into custody, mother was unable to play a constructive role in M.W.'s life. She essentially disappeared. Now, after more than a year of absence and passing contact, mother had become engaged again during the months that the TPR petition was pending. The court found that this pattern of behavior did not constitute a "constructive role" in M.W.'s life. The court also rejected mother's petition to create a permanent guardianship. The court explained that, by statute, a permanent guardianship was available only upon proof that adoption was not "reasonably likely during the remainder of the child's minority." 14 V.S.A. § 2664(a)(2). In this case, the court found, grandmother was prepared to adopt M.W. The court thus entered a final judgment order terminating mother's residual parental rights. This appeal followed.
¶ 6. Mother does not contest any of the court's factual findings regarding her inability to parent M.W. Instead, she argues that the court erred as a matter of a law in denying her request to create a permanent guardianship. According to mother, the family court's findings demonstrate that a permanent guardianship was appropriate in this case, but the court felt constrained to reject this option in light of our interpretation of the permanent guardianship statute in In re A.S., 171 Vt. 369, 764 A.2d 1188 (2000). Mother contends that creation of a permanent guardianship should be allowed even in cases where adoption is reasonably likely, and she asks the Court to reconsider its statement to the contrary in A.S.
¶ 7. Mother's argument is without merit. As the family court recognized, it is precluded by statute from issuing an order for a permanent guardianship unless it finds by clear and convincing evidence that several specific requirements are satisfied. 14 V.S.A. § 2664. Among other factors, the court must specifically find that "[n]either returning the child to the parents nor adoption of the child is reasonably likely during the remainder of the child's minority." Id. § 2664(a)(2). In A.S., we merely recognized and applied the plain language of § 2664. See 171 Vt. at 373, 764 A.2d at 1191 (recognizing that "by its own terms" *245 the permanent guardianship statute applies only in "cases in which adoption of the child or return to the child's parents is not reasonably likely"). Thus, we held that the statute did not apply in a case where the evidence showed that the foster family "expressed a willingness and a desire" to adopt the children. Id.
¶ 8. Mother nonetheless argues that we should ignore the plain language of the statute and allow the creation of permanent guardianships whenever a court finds that they would serve a child's best interests. According to mother, the terms of the permanent guardianship statute are inharmonious because they do not allow for this result. Mother also asserts that evidence that a foster parent is "willing" to adopt a child should not support a finding that adoption is "reasonably likely."
¶ 9. We are unpersuaded by these arguments and by mother's attempt to rewrite the statute. As noted above, the statute specifically provides that the family court must find by clear and convincing evidence that adoption is not "reasonably likely" during the child's minority before a permanent guardianship may be created. The intent of the Legislature is clear from the plain language used, and we therefore must enforce the statute as written. Tarrant v. Dep't of Taxes, 169 Vt. 189, 197, 733 A.2d 733, 739 (1999). Indeed, the Legislature reiterated this express intent in a policy statement that accompanied the statute. As the Legislature explained, the creation of a permanent guardianship is designed to "provide the opportunity for a child, whose circumstances make adoption or return to the care of the parents not reasonably possible, to be placed in a stable and nurturing home for the duration of the child's minority." 1999, No. 162 (Adj. Sess.), § 1 (cited in A.S., 171 Vt. at 374, 764 A.2d at 1191). The Legislature considered a permanent guardianship as a "last resort" appropriate "only when the options of return to the parents and adoption have been fully explored and ruled out based on clear and convincing evidence." Id. The terms of the statute are not inharmonious, as mother argues. Rather, they reflect a legislative choice that permanent guardianships are least likely to serve a child's best interests, and they are therefore appropriate only when certain criteria are met. Mother's arguments to the contrary are for the Legislature, not this Court. See A.S., 171 Vt. at 373-74, 764 A.2d at 1191 ("The wisdom of limiting the option of ordering a permanent guardianship to cases only in which adoption is not an available alternative is a question to be resolved by the Legislature.").
¶ 10. We similarly reject mother's narrow interpretation of the phrase "reasonably likely." Where the evidence shows that a foster parent is "willing" to adopt a child, it is "reasonably likely" that the child will be adopted as those words are commonly understood. See Comm. to Save the Bishop's House. Inc. v. Med. Ctr. Hosp., 137 Vt. 142, 153, 400 A.2d 1015, 1021 (1979) (in interpreting statute, Supreme Court presumes that Legislature intended the plain ordinary meaning of the language used). Certainly, under such circumstances, the possibility that the child will be adopted cannot yet be ruled out. In this case, the evidence showed that grandmother was prepared to adopt M.W. Therefore, the permanent guardianship statute, by its plain terms, does not apply. We find no error in the family court's decision.
Affirmed.