2010 VT 41

## Polly's Properties, LLC v. Department of Taxes

[998 A.2d 1047]

No. 09-124

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed May 21, 2010

Motion for Reargument Denied June 22, 2010

*Michael B. Clapp*, Burlington, for Plaintiff-Appellant.

*William H. Sorrell*, Attorney General, and *Suzanne M. Monte*, Assistant Attorney General, Montpelier, for Defendant-Appellee.

*L. Randolph Amis* of *L. Randolph Amis, P.C.*, Burlington, *Kevin T. Brennan* of *Vince & Brennan, P.C.*, Bristol, *John P. Crowley* of *Kulig & Sullivan, P.C.*, Rutland, *Marilyn F. Hand* of *Whalen, Hand & Gilmour, PLC*, Manchester Center, *Allen D. Webster* of *Lisman, Webster & Leckerling, P.C.*, Burlington, *Paul P. Hanlon*, Montpelier, *James J. Jamele*, Plainfield, *Jeffrey P. Kilgore* of *Kilgore Law Offices*, Waterbury, *Mark A. Langan*, *Brian R. Murphy* and *Karen McAndrew* of *Dinse, Knapp & McAndrew, P.C.*, Burlington, *Thomas P. Wright* of *Wright & Reeves, PLC*, Woodstock, *C. Robert Manby, Jr.* of *Manby & Babcock, LLP*, White River Junction, *Mark E. Melendy* of *Mark E. Melendy, PLLC*, Woodstock, *John C. Newman* of *Kenlan, Schwiebert Facey & Goss, P.C.*, Rutland, *Frank V. Petrosino* of *Paul Frank + Collins P.C.*, Burlington, *Wm. Roger Prescott* of *Downs Rachlin Martin, PLLC*, Burlington, *Steven E. Schindler* of *Schindler Law Office, PLC*, Rutland, and *Stephen A. Unsworth* of *Unsworth & Barra PLC*, Essex Junction, for Amici Curiae.

¶ 1. **Skoglund, J.** Polly's Properties, LLC (taxpayer) appeals from a superior court judgment upholding the Department of Taxes' assessment of a property-transfer tax on two parcels of real property transferred to taxpayer as its start-up capital. Taxpayer contends the trial court erred in concluding that,

because the transfers did not occur at the time of, or within ninety days thereafter, the filing of taxpayer's articles of organization it was not entitled to a transfer-tax exemption under 32 V.S.A. § 9603(24). For the reasons set forth below, we reverse.

¶ 2. On July 6, 2006, taxpayer filed its articles of organization as a limited liability company (LLC) with the Secretary of State. On May 21, 2007, some ten months later, taxpayer's principal organizers transferred two real estate parcels to the LLC. It is undisputed that the properties represented the LLC's initial capital. Taxpayer sought a transfer-tax exemption under 32 V.S.A. § 9603(24), which provides an exemption for "[t]ransfers made to a limited liability company at the time of its formation pursuant to which no gain or loss is recognized under the Internal Revenue Code, except where the commissioner finds that a major purpose of such transaction is to avoid the property transfer tax." The Department of Taxes denied the claimed exemption on the ground that the transfer was not made at the time of the LLC's "formation" or within the subsequent "ninety-day window" allowed by the Department. The Commissioner of Taxes upheld the Department's decision and its assessment of taxes, interest, and penalties which totaled, at the time of the ruling, $2,632.37 and $3,311.82 on each parcel respectively.

¶ 3. Taxpayer appealed the Commissioner's ruling to the superior court. The court concluded that the LLC was "formed" on July 6, 2006, when its articles of incorporation were filed, and that any qualifying transfer under § 9603(24) technically should have occurred at that time. At the same time, however, the court recognized the "dilemma" created by applying a "literal application of § 9603(24)" since "simultaneity [of formation and filing] would usually be impossible." Nevertheless, the court concluded that the Commissioner's "informal 'practice' of allowing a 90-day period" for qualifying transfers was within his authority and affirmed the denial of the exemption as outside the ninety-day window. This appeal by taxpayer followed.

¶ 4. The facts here are uncontested. The issue turns entirely on the proper interpretation of the transfer-tax exemption statute, a question of law for which the Commissioner is entitled to some deference so long as his reading "represents a permissible construction of the statute." *Tarrant v. Dep't of Taxes*, 169 Vt. 189, 195, 733 A.2d 733, 738 (1999). The Department's argument here is relatively simple. The statutes governing LLC's unambiguously

provide that "[o]ne or more persons may organize a limited liability company . . . by delivering articles of organization to the office of the secretary of state." 11 V.S.A. § 3022(a); see also *id.* § 3022(b) ("Unless a delayed effective date is specified, the existence of a limited liability company begins when the articles of organization are filed."). The statutes employ the terms "form" and "organize" interchangeably. See, e.g., *id.* § 3012(a) ("A limited liability company may be *organized* under this chapter . . . ." (emphasis added)); *id.* § 3012(b) ("A limited liability company . . . engaging in a business subject to any other provisions of law . . . may be *formed* or authorized to transact business under this chapter only if permitted by, and subject to all limitations of, the other statute." (emphasis added)). Therefore, the "formation" of an LLC for purposes of qualifying for the transfer-tax exemption necessarily occurs when it is "organized" by means of filing articles with the Secretary of State. It thus follows that the property transfers at issue here — which occurred some ten months *after* taxpayer filed its articles — were untimely and ineligible for the tax relief afforded by the statute. Indeed, the Department maintains that this result is compelled by the "clear and unambiguous" language of the statutes.

¶ 5. Like the trial court below, however, the Department acknowledges that neither taxpayer nor any other LLC could literally comply with the plain terms of the statute because property transfers to an LLC must logically *follow* its organization. To avoid this conundrum, the Department recognizes tax-exempt transfers if they fall within a ninety-day "grace" period following the filing of the articles of organization, relief which was nevertheless unavailable to taxpayer here because its transfer was outside that window. As noted, the trial court found this to be a reasonable reading of the statute in order to avoid the "dilemma" created by applying its "literal" terms.[1]

---

[1] The dissent generally credits the Department's argument that the statute is unambiguous but also requires a ninety-day grace period for compliance. Neither the Department nor the dissent, however, fully confronts the inherent contradiction in this argument, explicated in the trial court's finding which we quote in full:

> Recognizing the practical (if not regulatory) dilemma which would be created by strict, literal application of § 9603(24), and that even virtual (let alone actual) simultaneity would usually be impossible, the Department had for some time followed an informal practice of allowing a 90-day period after legal formation of an LLC to complete necessary

¶ 6. With all due deference, the Department's reasoning does not withstand scrutiny. "At the time of its formation" either means at the time of "organization" or it means *something else*. If the so-called plain meaning is logically impossible — as the Department and trial court acknowledge — then we must search for a *different* meaning. See *TD Banknorth, N.A. v. Dep't of Taxes*, 2008 VT 120, ¶ 32, 185 Vt. 45, 967 A.2d 1148 (noting the general "presumption . . . against a statutory construction that would lead to . . . absurd results" (quotation omitted)). This search is what we traditionally refer to as statutory interpretation, and we typically look to a variety of sources for meaning, including the legislative history, purpose, context, and effects. See *In re Carroll*, 2007 VT 19, ¶ 9, 181 Vt. 383, 925 A.2d 990 (our paramount "objective in construing a statute is to effectuate the Legislature's intent," and where "doubts exist" arising from the language itself "[t]he intent should be gathered from a consideration of the whole statute, the subject matter, its effects and consequences, and the reason and spirit of the law" (quotation omitted)).

■ ¶ 7. Without adequately explaining why, the Department has — as noted — fixed on a ninety-day window for tax-exempt property transfers, and the trial court here found nothing objectionable in this rule-of-thumb. It is difficult, however, to discern the statutory principle underlying the Department's approach. Why ninety days? Why not sixty or 120? In essence, the Department has rewritten the statute to provide for what it deems to be a reasonable timeframe with no reference whatsoever to any underlying legislative purpose or justification.[2] As noted, the trial court accepted this rewriting as a well-intentioned effort to address the "dilemma" posed by the "literal application of the statute" without confronting the inherent problem posed by the Department's interpretation or its questionable exercise in legislative redrafting. See *In re Agency of Admin.*, 141 Vt. 68, 76, 444 A.2d 1349, 1352 (1982) (where a statute is inherently ambiguous

real property transfers, and still claim the exemption. That practice was recently adopted in a more formal manner, in a Technical Bulletin issued October 5, 2007, after the underlying events here, but prior to the Commissioner's Determination in this case.

[2] The Department notes that articles of organization may request a "delayed effective date" of up to ninety days, 11 V.S.A. § 3026(e), but the Department does not condition the ninety-day grace period upon such a request; it applies automatically to all applicants.

and "an agency seeks to define it" we must "consult not only the bare statutory language, but . . . seek out the interpretation intended by the statute's drafters to assure that the statute is being construed, rather than constructed anew").

¶ 8. In contradistinction to the Department's approach, taxpayer — supported by a group of eighteen amici curiae tax and business attorneys — attempts to define a timeframe for tax-exempt transfers by reference to the underlying purpose of the statute and general business practice. They note that the basic purpose of the federal tax statutes referenced in § 9603 is to provide for the nonrecognition of gain or loss where the property transfer "is a mere change in form." *Long v. United States*, 652 F.2d 675, 679 (6th Cir. 1981). Thus, as one leading tax commentator has explained, "[c]ontributions to a partnership or limited liability company as the start-up capital are, generally, nonrecognition events." 9 Mertens Law of Federal Income Taxation § 35F:5 (2009). The same principle clearly informs § 9603, which provides a state sales-tax exemption for transfers of property to corporations, partnerships, and LLC's where "no gain or loss is recognized" under the Internal Revenue Code. 32 V.S.A. § 9603(11), (15) & (24).[3]

¶ 9. While an LLC may become a "legal" entity when its articles of organization are filed, it is apparent that for tax-relief purposes the "formative" event is the initial transfer of capital, or capitalization of the company, which typically occurs at some point in time after the filing of the articles of organization, the execution of an operating agreement, and other steps in the process of getting an LLC up and running. Indeed, as amici here note,

---

[3] Section 9603(11), which exempts property transfers to a corporation at the time of its formation, references Internal Revenue Code § 351, which provides that "[n]o gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock in such corporation." 26 U.S.C. § 351(a). Section 9603(15), which exempts property transfers to a partnership at the time of its formation, incorporates Internal Revenue Code § 721, which similarly provides that "[n]o gain or loss shall be recognized to a partnership or to any of its partners in the case of a contribution of property to the partnership in exchange for an interest in the partnership." 26 U.S.C. § 721(a). Section 9603(24), which exempts transfers to an LLC at the time of its formation, also applies where "no gain or loss is recognized under the Internal Revenue Code" but references no specific federal statute because LLC's are treated like partnerships or corporations.

federal tax regulations in this area routinely conceptualize the "formation" of a partnership or LLC as a process, not a single event. See Treas. Reg. § 1.721-1(a) (providing that the rule of nonrecognition of gain or loss applies "to a partnership in the process of formation or to a partnership which is already formed and operating"). The Department itself recognizes this reality of business practice, explaining in its Technical Bulletin that the grace period for transfers to corporations, partnerships, and LLC's "recognizes that some of the acts involved in commencing a business are undertaken sequentially." Vt. Dep't of Taxes, Technical Bulletin, TB-39 at 2 (Oct. 5, 2007), available at http://www.state.vt.us/tax/pdf.word.excel/legal/tb/TB39.pdf.

¶ 10. Support for this understanding of capitalization as a formative event in the life of an LLC may be found in other states that provide similar transfer-tax relief. Indeed, a number of states literally define the formative event as the property transfer itself. Thus, Colorado excludes from the definition of a "sale" for tax purposes "[t]he *formation* of a limited liability company or partnership *by the transfer of assets* to the limited liability company or partnership." Colo. Rev. Stat. § 39-26-102(10)(i) (emphases added). Idaho is similar, providing an exemption from the payment of a sales tax for "[t]he *formation* of a partnership, joint venture, or limited liability company *by the transfer of assets* to the partnership, joint venture, or limited liability company." Idaho Code § 63-3622K(b)(3)(ii) (emphases added). Although inartfully drafted, § 9603(24) appears to have the same essential goal of providing tax relief for such "formative transfers" (to borrow amici's term).

¶ 11. Contrary to the claims of the Department, nothing in this construction of the statute violates the legislative purpose or imposes an unreasonable administrative burden. Rather, affording transfer-tax relief for the initial capitalization of an LLC regardless of its temporal proximity to the filing of the articles of organization appears to most closely effectuate the statutory purpose. Furthermore, the Department's understandable desire for a date certain or "bright line" beyond which property transfers would be ineligible for tax relief cannot be allowed to elevate administrative convenience over legislative intent. See *Marciano v. Immigration & Naturalization Serv.*, 450 F.2d 1022, 1029 (8th Cir. 1971) (Eisele, J., dissenting) (observing that "[c]onsiderations of administrative convenience" must be "secondary" to the deter-

mination and enforcement of legislative intent). Nor has the Department in fact shown that inquiring into the facts of property transfers to ensure that they qualify for the statutory exemption represents an unwieldy or even an unusual activity for the Department.[4]

¶ 12. We conclude, therefore, that the judgment must be reversed and a new judgment entered granting taxpayer's application for a transfer-tax exemption under 32 V.S.A. § 9603(24).[5]

*Reversed and remanded for further proceedings consistent with this opinion.*

¶ 13. **Johnson, J.,** dissenting. The fundamental inquiry at the heart of statutory interpretation is to ascertain the plain meaning of a statute's words in light of its legislative purpose. Today, the majority ignores this tenet of judicial review in favor of an approach that first infuses ambiguity into an unambiguous statute and then tasks this Court with rewriting the tax-exemption provision under 32 V.S.A. § 9603(24) to ease the burden that compliance with the deadline imposes on taxpayers. Because I agree with the trial court that a transfer of property to a limited liability company (LLC) 319 days after the LLC's articles of organization were filed cannot possibly meet the exemption's requirement that the transfer occur "at the time of [the LLC's] formation," I respectfully dissent.

¶ 14. On May 21, 2007, 319 days after the articles of organization were filed and the certificate of existence was issued, the two organizers and members of Polly's Properties, LLC transferred two real estate parcels to the LLC. These transfers also served as the LLC's initial capital. Notwithstanding this fact, the Department of Taxes determined that the property transfers were not exempt because the transfers were not made "at the time of [the LLC's] formation" pursuant to 32 V.S.A. § 9603(24). According to the Department, the date of formation was the date that the LLC was organized by filing the articles of organization with the

---

[4] In this case, the Department does not dispute taxpayer's assertion that the transfer of the condominium units was the first transfer of capital assets to taxpayer or that but for the ninety-day rule it would have qualified for the transfer-tax exemption.

[5] Our holding renders it unnecessary to address the additional arguments raised by taxpayer and amici.

Secretary of State.[6] Taxpayer appealed, unsuccessfully, first to the Commissioner of Taxes and then to the Chittenden Superior Court. This appeal followed.

¶ 15. In an appeal from an administrative body, we employ the same standard of review as applied in the intermediate appeal. *Tarrant v. Dep't of Taxes*, 169 Vt. 189, 195, 733 A.2d 733, 738 (1999). "We will not set aside the Commissioner's findings of fact unless clearly erroneous." *Id.* With regard to conclusions of law, we accord deference to the Commissioner's construction of tax statutes "where it represents a permissible construction of the statute." *Id.* (citing *Brattleboro Tennis Club, Inc. v. Dep't of Taxes*, 166 Vt. 604, 604, 691 A.2d 1062, 1063 (1997) (mem.)); see also *Burlington Elec. Dep't v. Dep't of Taxes*, 154 Vt. 332, 337, 576 A.2d 450, 453 (1990) ("Absent compelling indication of error, the interpretation of a statute by the administrative body responsible for its execution will be sustained on appeal." (quotation omitted)).

¶ 16. The majority ignores our familiar tools of statutory interpretation, which dictate that we first look to the plain meaning of a statute. See *Dep't of Taxes v. Murphy*, 2005 VT 84, ¶ 5, 178 Vt. 269, 883 A.2d 779 (noting that inquiry begins with language of statute, and "[i]f the statute's plain language resolves the conflict without doing violence to the legislative scheme we are bound to follow it" (quotation omitted)). Plain meaning, however,

---

[6] Because of the Department's longstanding interpretation of "formation" to mean the time an LLC's articles of organization are filed, the ninety-day grace period attaches to this organization date, mitigating the somewhat difficult statutory requirement that the transfer of property occur simultaneously with an LLC's formation. See Vt. Dep't of Taxes, Technical Bulletin, TB-39 (Oct. 5, 2007), available at http://www.state.vt.us/tax/pdf.word.excel/legal/tb/TB39.pdf. The bulletin formally adopted the following Department practice, which was already in existence:

> Interpreted strictly, "at the time of formation" would mean simultaneous with filing of the articles of organization (for an LLC), issuance of a certificate of incorporation (for a corporation) or registration of the business name (for a partnership). However, it has been the Department's practice to treat otherwise-qualifying transfers made within ninety days of formation [of] the transferee as exempt. The ninety-day grace period recognizes that some of the acts involved in commencing a business are undertaken sequentially and allows a sufficient amount of time for an orderly start-up of the new LLC, corporation or partnership. Transfers made outside of this grace period do not qualify for exemption.

*Id.* at 2.

cannot be ascertained simply by plucking out a word or phrase from a statute and divining its meaning in isolation. See *Munson v. City of S. Burlington*, 162 Vt. 506, 509, 648 A.2d 867, 869 (1994) ("It is a well-established canon of statutory construction that statutes relating to the same subject matter should be construed together and read in pari materia, if at all possible."). Thus, even conceding that the 32 V.S.A. § 9603(24)'s reference to "formation" is somewhat ambiguous, resolution of that ambiguity is accomplished by looking to the relevant LLC statutes, not by making up a definition from whole cloth. See *In re Estate of Cote*, 2004 VT 17, ¶ 10, 176 Vt. 293, 848 A.2d 264 (noting that when statute has conflicting, yet equally plausible interpretations, "we must ascertain legislative intent through consideration of the entire statute, including its subject matter, effects and consequences, as well as the reason and spirit of the law").

¶ 17. The relevant statutes here include both the tax-exemption statutes as well as the statutes governing LLCs. Because each set of statutes is relevant to the question of when an LLC is formed, but neither gives a definitive answer, the statutes should be construed in pari materia. See *Munson*, 162 Vt. at 509, 648 A.2d at 869. Section 9603(24) governs the tax exemption for transfers to LLCs and provides, in relevant part, a tax exemption for

> [t]ransfers made to a limited liability company *at the time of its formation* pursuant to which no gain or loss is recognized under the Internal Revenue Code, except where the commissioner finds that a major purpose of such transaction is to avoid the property transfer tax.

(Emphasis added.) The most relevant LLC statute, which governs the legal beginning of an LLC, uses somewhat different terminology and provides that

> [u]nless a delayed effective date is specified, the *existence* of a limited liability company *begins* when the articles of organization are filed.

11 V.S.A. § 3022(b) (emphases added).[7]

---

[7] In addition, with regard to the filing requirements with the Secretary of State, 11 V.S.A. § 3026(d) provides that "[a] document accepted for filing by the secretary of state is effective: (1) on the date it is filed, as evidenced by the secretary of state maintaining a record of the date and time of the filing; (2) at the time specified in the document as its effective time; or (3) on the date and at the time

¶ 18. Despite taxpayer's arguments, there is no discernible distinction between an LLC's "beginning," which according to 11 V.S.A. § 3022(b) is the date the articles of organization are filed, and an LLC's "formation" for purposes of the tax-exemption statute. Thus, looking at these two sets of statutes in pari materia, it is entirely reasonable for the Department to read the word "formation" as synonymous with "beginning" and "organization." See *Farmers Prod. Credit Ass'n of S. Burlington v. State*, 144 Vt. 581, 584-85, 481 A.2d 18, 20 (1984) (in construing exemption of property transfers to "federal instrumentalities," we noted that term "instrumentalities" was not defined in statute, but in light of statute's purpose to raise revenue, we found that Department's strict construction of grounds for exemption was reasonably related to this purpose). In the absence of any other fixed date denominated in the statutes, the Department's construction harmonizes the tax-exemption statute with the LLC statutes.

¶ 19. Notwithstanding this reasonable and straightforward approach to interpretation of the statute, the majority opts instead to pluck the word "formation" from the tax-exemption statute and hold that the term is ambiguous and must refer to a point after the articles of organization are filed with the Secretary of State. *Ante*, ¶ 9. Although no statute identifies when this mythical point occurs, the majority credits taxpayer's argument that capitalization should be the event that triggers formation. Beyond broad policy arguments, there is simply no justification for this interpretation, as the statute is neither ambiguous nor would construing the statute according to its plain meaning lead to an absurd result.

¶ 20. Moreover, the Department has a legitimate interest in an interpretation that adopts a fixed date for administration of the exemption, rather than the amorphous concept of formation that the majority adopts. This bright-line rule provides a deadline and removes the need for the Department to decide and judge which events in the life of any given LLC amount to formation. Although a statutory deadline cuts off an otherwise allowable application based on a certain date, and not on the individual merit of the claim, such a deadline applies equally to both the taxpayer who

---

specified in the document if the document specifies a delayed effective date and time." Upon receipt of this document and at the person's request, the Secretary of State issues a "certificate of existence or authorization" setting forth the date of organization. *Id.* § 3028(b)(2).

purposefully ignored it and the taxpayer who, through his own good-faith interpretation of the statute, honestly thought he had complied with the deadline constraints. In other words, a clear deadline both furthers administrative convenience and is fair across the board. See *TD Banknorth, N.A. v. Dep't of Taxes*, 2008 VT 120, ¶ 16 n.6, 185 Vt. 45, 967 A.2d 1148 (noting that "the Department has a legitimate interest in administrative efficiency and the fluid processing of tax returns" and refusing to credit "cramped" construction of statute that would greatly limit Department's ability to quickly process refund requests (quotation omitted)); *Farmers Prod. Credit Ass'n*, 144 Vt. at 585, 481 A.2d at 20 ("The purpose of the property transfer tax statutes is to raise revenue. . . . [E]xemptions from taxation are to be strictly construed, and . . . no claim of exemption should be allowed unless shown to be within the necessary scope of the statute." (quotations omitted)).[8]

¶ 21. The majority's reliance on the Internal Revenue Code (IRC) to support its construction of § 9603(24) is similarly misplaced. *Ante*, ¶¶ 8-9. Although § 9603(24) does contain a reference to the Internal Revenue Code (IRC), I agree with the State that this reference modifies only the phrase it immediately follows. Thus, the IRC is relevant only in ascertaining the quality of the transaction, i.e., whether a "gain or loss is recognized," and has no bearing on the definition of formation. 32 V.S.A. § 9603(24). Such an interpretation is in keeping with the rest of the statutory scheme, a scheme that has made explicit reference to the IRC where it is applicable. See *TD Banknorth*, 2008 VT 120, ¶ 15 (refusing to credit taxpayer's statutory interpretation argument where to do so would involve pulling out particular phrase for its literal meaning at expense of purpose of entire provision). Beyond the reference to the IRC, the majority can point to no other provision in the statutory scheme that supports a legislative intent to exempt such a wide swath of property transfers. See *Ins. Co.*

---

[8] Moreover, if the Legislature intended that any transfer of real estate to an LLC was to be exempt from the transfer tax, no matter when that transfer occurred, it had the opportunity to announce this broader rule. Indeed, the exemption for property transfers to corporations was amended from an open-ended, nondate specific exemption to one that contains identical "at the time of formation language." See 1975, No. 225 (Adj. Sess.), § 6 (replacing 32 V.S.A. § 9603(11)'s earlier exemption for transfers "made to a corporation for no consideration other than not less than eighty percent of its then issued and outstanding capital stock" with exemption for transfers "made to a corporation at the time of its formation").

*of Pa. v. Johnson*, 2009 VT 92, ¶ 22, 186 Vt. 435, 987 A.2d 276 (refusing to credit statutory interpretation that would require the court to "look beyond the plain language of the statute and ultimately find that the Legislature intended to exclude umbrella policies despite the fact that it clearly outlined the type of coverage that triggers the statute's application" (quotations omitted)); *In re M.W.*, 2007 VT 90, ¶ 9, 182 Vt. 580, 933 A.2d 243 (mem.) (refusing to credit alternative interpretation of statute and concluding that where "intent of the Legislature is clear from the plain language used . . . we therefore must enforce the statute as written"); *State v. DeRosa*, 161 Vt. 78, 80, 633 A.2d 277, 279 (1993) ("[W]e presume the Legislature used the language [in the statute] advisedly.").

¶ 22. To bolster its rejection of the Department of Taxes' interpretation of formation, the majority credits, without discussion, taxpayer's argument that without the ninety-day grace period, compliance with § 9603(24) "is logically impossible." *Ante,* ¶ 6. I disagree.[9] We have long adhered to the rule that "statutes should not be construed to produce absurd or illogical consequences." *Rhodes v. Town of Georgia*, 166 Vt. 153, 157, 688 A.2d 1309, 1311 (1997); accord, e.g., *TD Banknorth*, 2008 VT 120, ¶ 32 ("A presumption obtains against a . . . construction that would lead to . . . absurd results." (quotations omitted)). If this statute were truly incapable of implementation, as written, or the statute failed in its essential purpose, we would have some authority to solve taxpayer's problem. See *Rhodes*, 166 Vt. at 157, 688 A.2d at 1311 (noting that, to invoke impossibility rule, party "must dem-

---

[9] The majority focuses on the Department's practice of allowing a ninety-day window for tax-exempt property transfers and concludes that, because a sixty or 120-day window may also have been justified, the Department has rewritten the statute "with no reference whatsoever to any underlying legislative purpose or justification." *Ante,* ¶ 7. The focus on the grace period, however, is misplaced. Indeed, the outcome of this case does not depend on the existence of or justification behind the ninety-day grace period because even without the grace period, 319 days after the articles of organization are filed cannot be within the timeframe of eligibility for the tax exemption. Moreover, taxpayer raised only two arguments below and on appeal: (1) a statutory construction argument over the meaning of the phrase "at the time of formation" and (2) an argument over whether the imposition of the ninety-day grace period in this case amounted to an impermissible retroactive application of the law. The question of whether the Department went through the proper rulemaking procedure to implement the ninety-day grace period was notably not raised by the parties and was therefore not a dispute between them.

onstrate why this Court should not construe the statute in its ordinary sense or why the consequences of such construction will cause hardship or constitute impossibility"). But our standard under this prudential rule is very limited and does not ordinarily extend to making choices, among many available, to solve the problem. There is simply no way to construe the statute to allow a transfer that occurred 319 days after an LLC's articles of organization were filed without reading the words "at the time of formation" out of the statute. See *Colwell v. Allstate Ins. Co.*, 2003 VT 5, ¶ 15, 175 Vt. 61, 819 A.2d 727 (recognizing that though statute at hand "does not fully address the problem" Legislature intended to address, "in view of the number of choices available to solve the problem . . . this is an inappropriate case for the Court to fashion the particular remedy [appellants] seek" because to do so would place Court in the position of making policy choices best left to Legislature).

¶ 23. It is true that the Department's adoption of a policy to modify the meaning of "formation" to include qualifying transactions made within ninety days of an LLC's filing date gives credence to taxpayer's and amici's view that it is logistically difficult to comply with the literal words of the statute. The Department's policy was intended to ease that burden for taxpayers, while still adhering to a reasonable timeframe in which formation and transfer could occur. To be sure, the statutes require a taxpayer to undertake advanced planning to ensure that the transfers occur simultaneously with the filing of the articles of organization. Compliance, however, is not impossible. See *Rhodes*, 166 Vt. at 157-58, 688 A.2d at 1311 (rejecting party's interpretation of a statute where it "did not demonstrate . . . that the statute imposes an impossible mandate"). The statutes permit an LLC organizer to delay the effective date of organization for up to ninety days from the date on which the articles of organization are filed. 11 V.S.A. § 3026(e). An LLC organizer also has the ability to reserve a name for a period of 120 days and renew that reservation for two successive 120-day periods. *Id.* § 3006(b) & (c). Added together, these provisions allow an organizer a total of 450 days in which to coordinate the timing of LLC formation with a property transfer. These devices, though perhaps viewed as cumbersome by some, allow an organizer to comply with 32 V.S.A.

§ 9603(24)'s requirement that the transfer of properties be contemporaneous with formation.[10]

¶ 24. Therefore, we are not faced with a situation in which we are compelled to disregard the plain meaning of a statute because the result would thwart both common sense and legislative purpose. In *TD Banknorth*, for instance, we addressed whether a parent company's creation of several holding companies was done for the purpose of avoiding tax liability. Taxpayer there argued that, under the plain meaning of the applicable statute, creation of the companies was entirely allowable and that these companies should therefore not be disregarded for taxation purposes. We rejected such a reading of the statute and concluded that the Legislature could not have intended to create "a means through which taxpayers could almost completely avoid payment of the bank franchise tax by the creation of shell corporations that have no economic substance and whose sole purpose is to minimize taxes." 2008 VT 120, ¶ 32. Indeed, such an interpretation, which would allow taxpayers to use the literal meaning of tax statutes as a vehicle for tax avoidance, stands in direct contrast to the revenue-generating purpose of tax statutes. See *In re Adoption of B.L.V.B.*, 160 Vt. 368, 373, 628 A.2d 1271, 1274 (1993) (rejecting construction of adoption statute that would terminate parental rights of biological parent who intended to continue raising child with help of partner because "[s]uch a narrow construction would produce the unreasonable and irrational result of defeating adoptions that are otherwise indisputably in the best interests of children").

¶ 25. Here, there is no insurmountable hurdle to compliance. In contrast to the situation we addressed in *TD Banknorth*, it is not absurd to assume that the Legislature intended to disallow exemptions for transfers that occur months and even years after the articles of organization are filed. Rather, such a construction supports the purpose behind any deadline — the reasonable administration of the law.

---

[10] Further, the majority's statement that the Department has acknowledged that literal compliance with the statute is impossible finds no support. See *ante*, ¶ 5. Indeed, in its initial decision, the Department explicitly noted that, even without the ninety-day grace period, "the taxpayer here would be in exactly the same situation." The Department went on to list the statutory provisions available to taxpayer, noting that "taxpayer failed to utilize these provisions to structure its transactions so that the property transfers would occur in tandem with the LLC's formation."

¶ 26. The outcome of finding an absurd result where none exists leaves this Court with the task of cobbling together some sort of fix, a task better suited to the legislative branch. Indeed, though the majority cites several policy reasons for adopting the date of capitalization as the date of formation, *ante*, ¶¶ 9-10, there is at least one case that has forwarded a different theory of when formation occurs. See *Northshire Bookstore Props., LLC v. Dep't of Taxes*, No. 10-24-07 Bncv, 2008 WL 4281974 (Vt. Super. Ct. Mar. 27, 2008) (rejecting taxpayer's argument that "time of formation" referred to date on which LLC's operating agreement was finalized). Because there is likely to be more than one way to effectuate the Legislature's intent, it is beyond this Court's power to make the choice. See *Colwell*, 2003 VT 5, ¶ 15.

¶ 27. Admittedly, the difficulty the Court confronts in this case is that there is no apparent problem with the quality of the transaction. If taxpayer had complied with the statutory deadline, very likely it would not have been subject to the transfer tax for all of the public policy reasons that support nontaxation of this type of transfer. This case is only about reasonable deadlines, and, though the imposition of the deadline may inflict a harsh result, the majority's proposed remedy is to distort the statute to fix its problem, which was always a problem of its own creation.

¶ 28. I respectfully dissent. I am authorized to state that Justice Dooley joins in this dissent.