Vt. Hous. Fin. Auth. v. Coffey, No. S0367-11 CnC (Toor, J., Aug. 11, 2011)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

VERMONT SUPERIOR COURT
CHITTENDEN UNIT
CIVIL DIVISION

| | |
|---|---|
| VERMONT HOUSING FINANCE AUTHORITY<br> Plaintiff<br><br> v.<br><br>GAIL H. COFFEY; CHAMPLAIN HOUSING TRUST, INC. f/k/a BURLINGTON LAND TRUST, INC.; BUILDING 601 UNIT OWNERS ASSOCIATION; DALTON DRIVE NEIGHBORHOOD ASSOCIATION, INC.; and ANY TENANT RESIDING AT 601A DALTON DRIVE, ESSEX, VT<br> Defendants | Docket No. S0367-11 CnC |

RULING ON MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST
BUILDING 601 AND DALTON DRIVE

Plaintiff/Mortgagee Vermont Housing Finance Agency (VHFA) seeks a decree to

foreclose on its mortgage on condominium unit 601A Dalton Drive in Essex, Vermont

(Unit 601A). VHFA named several defendants as parties possibly holding interests in the

property including the mortgagor, Gail Coffey, as well as Building 601 Unit Owners

Association and Dalton Drive Neighborhood Association, Inc. (the Associations). The

Association(s)[1] counterclaimed and cross-claimed against its codefendants, seeking to

---

[1] It is unclear exactly what the difference is between Building 601 Unit Owners Association and Dalton Drive Neighborhood Association, Inc. The filings have not been consistent. VHFA filed two separate returns of service on the same individual. The cross-claim lists both associations as cross-claim plaintiffs in the caption, but the motion only pertains to the Building 601 Association and Attorney Riley only signs on behalf of the Building 601 Association. Both associations respond to VHFA's motion for judgment and subsequent motion for partial summary judgment, but only the Building 601 Association moves for judgment against Coffey.

obtain a judgment for unpaid condominium assessments and fees, and to foreclose Coffey and junior lienholders' interests in Unit 601A.

VHFA moved for partial summary judgment against the Associations, arguing that the Associations are only entitled to a lien with superpriority equivalent to six months of periodic assessments pursuant to 27A V.S.A. § 3-116. The court (Tomasi, J.) scheduled the claim for a hearing. The hearing was held before the undersigned on August 10.

Discussion

VHFA's motion for partial summary judgment only raises issues of law and does not require a factual analysis. The question presented is whether the portion of a condominium association's lien entitled to superpriority over a first mortgage includes common-expense assessments incurred after the date the condominium association initiates an action to enforce the lien.[2] VHFA argues that (1) the plain language of 27A V.S.A. § 3-116 necessitates a conclusion that the Associations' liens are only prior to VHFA's mortgage to the extent of six months of periodic assessments, and (2) legal and equitable title to the property are not merged until confirmation of sale. The Associations argue that assessments accruing after the filing of the action should also be entitled to superpriority on the grounds that (1) the court should follow the Windham Superior Court's decision in Wells Fargo Bank v. Schunk, No. 193-4-10 Wmcv (Vt. Super. Ct. April 28, 2011) (Wesley, J.), and (2) policy arguments and equitable considerations support its position.

---

[2] Although the parties appear to address the issue with reference to the date VHFA filed its foreclosure complaint, the relevant date is based on the institution of an action to enforce the condominium's lien, in this case, the Associations' filing of the counterclaim and cross-claim. *See* 27A V.S.A. § 3-116(b)(3).

Condominium associations' liens and their relative priorities are created and governed by 27A V.S.A. § 3-116. Under that statute, a condominium association "has a statutory lien on a unit for any assessment levied against that unit or fines imposed against its unit owner." 27A V.S.A. § 3-116(a). This lien may include a variety of fees, charges, and fines. Id.

While an association's lien generally enjoys priority over other liens, it is not prior to "a first mortgage or deed of trust on the unit recorded before the date on which the assessment to be enforced became delinquent." Id. § 3-116(b), (b)(2). However, the association's lien may have superpriority over a first mortgage "to the extent of the common expense assessments based on the periodic budget adopted by the association pursuant to subsection 3-115(a) of this title which would have become due in the absence of acceleration during the six months immediately preceding institution of an action to enforce the lien." Id. § 3-116(b).

In essence, the superpriority gives the condominium association the power to recover some sale proceeds ahead of the mortgagee in the event of foreclosure. If the property is sold at auction, the condominium gets the first bite at the apple: the equivalent of six months of common-expense assessments that would have become due immediately preceding the date that it initiates an action to enforce the lien. Then, if there is any money left, the mortgagee is paid in full or until the money is exhausted. If there is anything left after that, the condominium association is entitled to proceeds equal to the remainder of its claim.

The six-month superpriority is intended to "strike[] an equitable balance between the need to enforce collection of unpaid assessments and the obvious necessity for

3

protecting the priority of the secured interests of lenders." Id. § 3-116—Official Comment ¶ 2. "As a practical matter, secured lenders will most likely pay the six months' assessments demanded by the association rather than having the association foreclose on the unit." Id.

The plain language of the statute is clear and controls this issue. The general rule is that, except as provided in subsection (c) of § 3-116, a first mortgage recorded *before the date on which the assessment to be enforced became delinquent* has priority over the condominium association's lien. 27A V.S.A. § 3-116(b)(2). A condominium association's lien is only prior to a first mortgage *to the extent of* common-expense assessments for the six months immediately preceding the commencement of the condominium association's foreclosure action. This ends the discussion. Assessments may continue to mount after the filing of a foreclosure action. But in situations where the mortgage has already been recorded, they are simply not entitled to superpriority status because they become delinquent after the date of recordation.

The court does not agree with the Schunck decision from the Windham court. That court reasoned that condominium associations must be entitled to collect unpaid assessments accrued after the filing of a foreclosure action to maintain the balance of interests created by the Legislature. It relied on the policy consideration that, because the foreclosure process often takes between one and two years, the condominium would absorb the loss of substantial assessments "particularly if several units are in arrears simultaneously." No. 193-4-10 Wmcv at 2. The court disagrees because the language of the statute is clear, and it "must enforce the statute as written." In re M.W., 2007 VT 90, ¶ 9, 182 Vt. 580 (mem.).

4

Furthermore, while the Official Comments adopted do not address the policy considerations raised by the Windham court, they specifically state that "secured lenders will most likely pay the six months' assessments demanded by the association rather than having the association foreclose on the unit." 27A V.S.A. § 3-116—Official Comment ¶ 2 (emphasis added). Considering the equitable balance set by the Legislature, it would be presumptuous to introduce new policy considerations to the mix that could add significant additional assessments to the secured lenders' tab.

The Schunck court also presents another basis for its decision: that "a foreclosure judgment vests full legal and equitable title in the property with the mortgagee" subject only to the equity of redemption. Schunck, No. 193-4-10 Wmcv at 2 (quoting In re Canney, 284 F.3d 362, 369 (2d Cir. 2002)). The court held that this constitutes "separate grounds, independent from its statutory construction, for charging [the mortgagee] with satisfying the assessments for the unit . . . ." Id.

While the court agrees that a foreclosure judgment strips the mortgagor of some of her interests, it does not mean that common-expense assessments that become due after the association initiates an enforcement action are given superpriority. The lien statute makes no reference to title.[3] The superpriority only extends to the assessments that would have become due during the six months immediately preceding the filing of an action to enforce the lien, irrespective of the mortgagee's posture. By definition, the assessments the Associations are seeking become due after this key date. The

---

[3] The court notes that a mortgagee already has legal title to the unit, regardless of whether it holds a foreclosure judgment. See Canney, 284 F.3d at 369. Nevertheless, a mortgagee is not a "unit owner" under the condominium statute because its interests in the unit are "solely as security for an obligation." 27A V.S.A. § 1-103(31).

5

Associations do not argue that VHFA is no longer a first mortgagee otherwise entitled to priority. Therefore, the newest assessments are not entitled to superpriority.

The Associations' remaining arguments are unpersuasive. The fact that the court may appoint a receiver to collect money owed to a unit owner and then intercept sums to pay for common-expense assessments pursuant to 27A V.S.A. § 3-116(k) is irrelevant to the issue of priorities and does not modify the plain language of § 3-116(b)(3). Furthermore, the Legislature has already balanced the equities when enacting the priority scheme at issue here, and the court sees no compelling reason why it should put its fingers on the scale in this instance.

<u>Order</u>

VHFA's motion for partial summary judgment is granted.

Dated at Burlington this 11th day of August, 2011.

_____
Helen M. Toor
Superior Court Judge